**Electronically Filed
Supreme Court
SCWC-14-0000780
17-JUN-2016
07:54 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ANASTASIA Y. WALDECKER, Petitioner/Petitioner-Appellant,

vs.

JOHN O'SCANLON, Respondent/Respondent-Appellee.

SCWC-14-0000780

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000780; UCCJEA No. 14-1-0002)

JUNE 17, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case arises from the 2010 divorce of Anastasia

Waldecker and John O'Scanlon in Nevada. When they divorced,

Waldecker and O'Scanlon had one minor child together (Daughter).

In anticipation of the divorce, Waldecker and O'Scanlon entered

into a Property Settlement Agreement that was incorporated into

the Divorce Decree entered by a Nevada court.  The Settlement Agreement provided that Waldecker and O'Scanlon would have joint physical custody of Daughter, but if either parent moved more than two hundred miles away from either Oʻahu or San Francisco, then sole custody would automatically revert to the remaining parent.

Following the divorce, Waldecker and O'Scanlon both moved to Oʻahu.  In early 2014, Waldecker filed a petition in the Family Court of the First Circuit to change the custody arrangement because she had remarried and was anticipating a move to Florida with her new husband.  According to Waldecker, her anticipated relocation constituted a material change in circumstances that required the family court to examine whether the change in custody would be in Daughter's best interests.  Waldecker also argued that O'Scanlon had become a bad parent, and that this also constituted a material change in circumstances.

O'Scanlon argued that because the parties had agreed to the Settlement Agreement, which had been approved by the Nevada court and which provided for Daughter's custody in the event of a relocation, there was no material change in circumstances.  He contended that the family court should therefore enforce the change of custody provision in the Divorce Decree without performing a "best interests of the child" analysis.

2

The family court agreed with O'Scanlon and concluded that because the parties had contemplated a future relocation in the change of custody provision in the Divorce Decree, there was no material change in circumstances. The family court thus enforced the Divorce Decree and awarded sole physical custody of Daughter to O'Scanlon without explicitly finding that the change of custody was in Daughter's best interests. Waldecker appealed, and the Intermediate Court of Appeals (ICA) affirmed the family court's decision.

We hold that the family court erred in failing to consider the best interests of the child. Accordingly, we vacate the ICA's judgment on appeal and the family court's order, and remand this case to the family court for further proceedings consistent with this opinion.

## I.  Background

### A.  The Divorce Decree

Waldecker and O'Scanlon were divorced in Reno, Nevada, pursuant to the Nevada district court's May 13, 2010 Findings of Fact, Conclusions of Law, and Decree of Divorce (Divorce Decree), which incorporated the parties' Settlement Agreement. Waldecker subsequently filed the Divorce Decree in the State of Hawaiʻi on January 22, 2014.

According to the Divorce Decree, Waldecker and

3

O'Scanlon were married on or about October 4, 2003, and physically separated on October 7, 2009.  The parties have one minor child, Daughter, who was born on August 17, 2005.  At the time of the divorce, O'Scanlon, Waldecker, and Daughter were residents of Nevada.

The Settlement Agreement explicitly awarded joint legal and joint physical custody of Daughter to both parties.  Relevant to the instant proceedings, the Settlement Agreement contained the following provisions:

> 4.    Husband and Wife shall have the joint legal and physical care, custody and control of [Daughter].  Shared custody and visitation shall be on a week-on/week-off basis, commencing May 15, 2010.  No provision is made for visitation during holidays or school breaks such that the week-on/week-off cycle will continue except to the extent that the parties agree otherwise.
>
> 5.    Nevada shall retain exclusive continuing jurisdiction over issues of child custody, visitation, support and related matters.  It is contemplated that both Husband, Wife and the minor child will initially be residing on the island of Oahu, Hawaii.  If in the future either party relocates to a residence beyond a 200-mile radius of Oahu or San Francisco, modification of custody shall automatically occur then changing to the other party remaining having primary physical custody of said minor child, at the option of the remaining party.
>
> 6.    Husband shall pay child support to Wife in the amount of $500.00 per month, commencing upon the entry of a Decree of Divorce.  This provision for child support satisfies the statutory formula.  Health care expenses which are not reimbursed by insurance will be equally divided.  Husband shall be entitled to the exemption annually for income tax purposes.  Any applicable Social Security benefits based upon the age of Husband and/or said minor child will revert to Husband upon the entry of a Decree of Divorce.  Husband shall pay for the school said minor child will attend, and will be entitled to choose the school and its location.  In the event that Husband dies or

4

> becomes mentally or physically incompetent, the
> responsibility regarding choice of school shall be
> assigned to Husband's adult children.

(Emphasis added).

The Nevada Divorce Decree specifically found that "Plaintiff and Defendant executed a Property Settlement Agreement on May 13, 2010, which is fair and equitable, and should be ratified, approved and incorporated into the Decree of Divorce[,]" but did not include any findings regarding Daughter's best interests.

In 2010, Waldecker relocated to Oʻahu with Daughter, and O'Scanlon followed shortly thereafter. They resided on Oʻahu from the initial move through the 2014 change of custody hearing in the present action.

## B. 2014 Motions Regarding Custody

Waldecker filed a Motion to Change Custody, Visitation, and Child Support in the family court on February 4, 2014, and attached a declaration she made on January 2, 2014.

In her declaration, Waldecker alleged several grounds by which the family court could find that there had been a material change in circumstances since the Divorce Decree: (1) Waldecker remarried, (2) Waldecker was pregnant with another child from her new husband and was expecting to give birth at the end of March, (3) Waldecker's husband is active-duty military and

was scheduled to change duty stations to the mainland, and (4) O'Scanlon had become an unfit parent for a number of reasons.

On March 10, 2014, O'Scanlon filed a motion to enforce the custody and education provisions of the original decree and attached an affidavit in opposition to Waldecker's motion.

In his affidavit, O'Scanlon addressed several of the facts alleged in Waldecker's declaration. O'Scanlon acknowledged Waldecker's marriage to an active-duty military husband, as well as her anticipated relocation to the mainland. O'Scanlon also claimed to be "an experienced father of three sons" who can provide Daughter "with a stable and wholesome life."

In addition, O'Scanlon alleged that in 2009, after he filed for divorce in Nevada, Waldecker took Daughter and moved in with a mutual friend and "avoided making arrangements for [O'Scanlon] to have timesharing with [Daughter]." O'Scanlon stated that after approximately two months, Waldecker left to live in Reno without notifying him, during which time O'Scanlon had no contact with Daughter for a few weeks. Waldecker subsequently informed O'Scanlon she had moved to Hawaiʻi with Daughter and her then-boyfriend. According to O'Scanlon, at some point thereafter, Waldecker's then-boyfriend allegedly became abusive, and O'Scanlon offered Waldecker money and a vehicle if she promised to never take Daughter away from O'Scanlon again.

According to O'Scanlon, Waldecker agreed to abide by the relocation and school provisions in the Divorce Decree in exchange for O'Scanlon's financial help.

## C.    Family Court Hearing

The Family Court of the First Circuit held a hearing on both motions on March 19, 2014.[1]  Waldecker agreed with the family court that to change custody, the court must make a finding that there had been a material change in circumstances since the Divorce Decree issued.[2]

At the hearing, Waldecker's counsel mixed legal arguments with assertions regarding what Waldecker would testify to, and asserted that she would testify regarding the same four grounds for finding a material change that she alleged in her declaration.  Waldecker did respond to some questions from her

---

[1]    The Honorable Kevin Souza presided.

[2]    THE COURT:  [I]sn't it correct that if I'm going to change the custody orders that are currently contained in a divorce decree that the court has to make a finding that there's been a material change in circumstances?

[WALDECKER'S COUNSEL]:  Yes, that--and that--and that it's in the child's best interest--

THE COURT:  Right.

[WALDECKER'S COUNSEL]:  --to address that change by a change of custody.

counsel and from the court, although not under oath.[3]

When the court asked Waldecker specifically about the relocation-custody provision in the Divorce Decree, her counsel replied that she "would argue that she never agreed to that. She was forced--." The court then inquired how the provision got into the Divorce Decree. Her counsel replied that "[i]t was put in there by Mr. O'Scanlon's counsel. And Mrs. Waldecker, it seems that she had no choice but to sign it in exchange for assistance and--financial assistance." Her counsel continued, "[s]he felt like she was being bribed and had to."

Waldecker also argued that the main reason she was seeking a change of custody was "O'Scanlon's bad parenting skills and mistreatment of their daughter." In support, Waldecker offered a letter she allegedly wrote to O'Scanlon about his bad parenting. However, after O'Scanlon's counsel objected to the letter on hearsay grounds, and Waldecker acknowledged that she had never sent the letter to O'Scanlon, Waldecker's counsel agreed that Waldecker would not attempt to enter the letter into evidence.

With regard to O'Scanlon's motion to enforce the

---

[3] The court explained to the parties that because it was hearing the motions during the "Wednesday OSC calendar," both parties would have an opportunity to proceed by offer of proof and argument, with Waldecker going first since it was her motion. The court interjected questions throughout the hearing.

Divorce Decree and thereby change custody, Waldecker argued that

Hawai\`i Revised Statutes (HRS) § 571-46 (2014) requires that any

change in custody requires a finding by the family court that it

is in the best interests of the child.  When challenged by the

court, Waldecker argued:

> [WALDECKER'S COUNSEL]:  [N]o matter what the decree
> says as far as if she relocates, custody must go to
> father, that that's not how things are done in Hawaii,
> that the [sic] 571-46 makes it clear that post-divorce
> change of custody are based on best interest of the
> child alone, not--
>
> THE COURT:  No, that's not--that's not what 571-46
> says.
>
> [WALDECKER'S COUNSEL]:  46 says--says that. It says
> based solely on the best interest, 571-46.
>
> THE COURT:  That a post-decree change in custody is--
>
> [WALDECKER'S COUNSEL]:  Yes.
>
> THE COURT:  --based solely on the best--
>
> [WALDECKER'S COUNSEL]:  Yes.
>
> THE COURT:  It's not--so you're saying that the court
> would not need to find a material change in
> circumstances?
>
> [WALDECKER'S COUNSEL]: Right.  After that.  But what
> I'm trying to say here is a divorce decree is much
> like a pre-marital agreement.  You can't say this will
> automatically change custody because before that has
> to happen the judge has to find that that change has
> to be in the best interest of the child.  So even if
> the divorce says she gets custody, it won't happen
> unless you find that that's best.  So that's what
> controls, not the divorce.

O'Scanlon argued that the holding from <u>Nadeau v.

Nadeau</u>, 10 Haw. App. 111, 861 P.2d 754 (1993), should control

because the Divorce Decree specifically provided for the event of

a relocation similar to <u>Nadeau</u>.  O'Scanlon stressed that

9

Waldecker knowingly and with the advice of counsel entered into the Settlement Agreement:

> [The custody provision] was bargained [sic]. She did not have to accept financial help. She could have gotten financial help from someone else. She signed the divorce decree, the property settlement agreement. Not only did she sign it. She had the assistance of legal counsel at the time that she entered into that agreement. Both parties had the assistance of legal counsel when they entered into that agreement. So it was bargained for.

O'Scanlon also alleged that Waldecker's behavior with regard to allowing O'Scanlon to see Daughter prior to the divorce was a large factor in including the relocation-custody provision in the Settlement Agreement.[4]

In response to Waldecker's claims about O'Scanlon's fitness as a parent, O'Scanlon made an offer of proof regarding many of the same issues that he asserted in his affidavit. He argued that he was: "an experienced father," who has "raised three sons already"; he provides Daughter with a "stable and wholesome life"; he has "flexible hours" to provide care for Daughter; and he has the help of two adult sons who live with him

---

[4]    [O'SCANLON'S COUNSEL]:  . . . Part of the impetus for their arriving at that provision is during the time of separation Ms. Waldecker was the primary custodian because she kept the child away from him and refused to tell him where she was. And she actually moved from state to state. So--

THE COURT:  This is prior to the divorce or this is--

[O'SCANLON'S COUNSEL]:  This is prior to the divorce. That was the impetus for putting in these special provisions about relocation. It was to prevent that from happening again.

and help him take care of Daughter.

After hearing the parties' arguments, the family court concluded:

> [B]ased on the relevant and applicable Hawai'i case law that the parties did have a provision that addressed relocation in the decree and therefore the court is going to find that there is no material change in circumstance here based on mother's proposed relocation. So I am going to respectfully . . . find that there is no material change in circumstance. I am going to deny mother's motion.

On May 19, 2014, the family court entered its Findings of Fact (FOFs) and Conclusions of Law (COLs) and ordered that, in the event Waldecker relocated beyond 200 miles of O'ahu as she planned, O'Scanlon be awarded sole custody of Daughter, subject to a visitation schedule, which included allowing Daughter to visit Waldecker for up to two months in the summer, during spring break and winter break on even numbered years, and during fall break on odd numbered years. The family court's order also provided that upon Waldecker's relocation, O'Scanlon's monthly child support obligation would be terminated, and Waldecker would be obligated to pay O'Scanlon $70.00 per month in child support.

**D. ICA Appeal**

On appeal, Waldecker argued that the family court erred by failing to make any finding whatsoever that its anticipated change of custody and visitation was in the best interests of the child, and by failing to consider or even mention any of Mother's alleged changes of circumstances in its findings of fact or

11

conclusions of law.

Waldecker acknowledged that to amend the custody arrangement in a prior judicial order, the party seeking to change the arrangement must show both a "material change in circumstances" since the entry of the order and that the proposed change in custody would be in the best interests of the child. However, Waldecker argued that her relocation from Hawaiʻi to Florida would be a material change in circumstances "sufficient to warrant the Family Court's reexamination of existing custody and visitation orders."

Waldecker finally argued that paragraph 5 of the Settlement Agreement, which provides for automatic change of custody in the event one of the parents relocates to a place beyond 200 miles of Oʻahu or San Francisco, contravenes the requirement of HRS § 571-46(6) "that any modification or change of child custody must be required or justified by the best interests of the child."

O'Scanlon argued that under Nadeau, 10 Haw. App. at 111, 861 P.2d at 754, and Turoff v. Turoff, 56 Haw. 51, 527 P.2d 1275 (1974), a party proposing a change in custody from a prior custody order must first show a material change in circumstances since the prior custody order, and must further show that the proposed change in custody would be in the best interests of the

12

child.

O'Scanlon, relying on Nadeau, argued that "[r]elocation is not a material change in circumstance if the Divorce Decree contains provisions which govern future relocations." O'Scanlon further relied upon an ICA decision, Child Support Enforcement Agency v. MS-M, No. CAAP-11-0000387 (Haw. App. Sept. 20, 2013) (SDO), in which the ICA stated that a parent's out-of-state relocation would be a material change of circumstances "absent a divorce decree or custody order provision addressing the issue." Id. at *3. According to O'Scanlon, because the Divorce Decree specifically addresses relocation of a parent, there is no material change of circumstances to warrant changing the divorce decree.

In reply, Waldecker reiterated that the family court made no findings regarding Daughter's best interests. According to Waldecker, pursuant to HRS § 571-46(a)(1) and (6), it was error for the court to change the custody of Daughter without a finding regarding her best interests. Waldecker argued that parents cannot "pre-decide" or "pre-determine" child custody arrangements by contract because any future change in custody can only be made after a court has determined the child's best interests.

The ICA agreed with the family court's conclusion that

13

although, in general, a relocation is a material change in circumstances, that is not the case where a provision in the divorce decree specifically addresses the relocation of one parent. The ICA affirmed the family court's order awarding custody to O'Scanlon and entered its judgment on appeal on February 27, 2015.

Waldecker timely filed her Application for Writ of Certiorari, in which she raises the following questions:

> 1.   Is Hawai'i Family Court Rule 54.2(a)[5] violated by a Post-Decree Order that changes physical custody of a minor child but fails to make any finding that the change of custody is in the best interests of the minor child.
>
> 2.   Can a Divorce Decree that automatically changes custody of a minor child upon a child's future relocation, without any requirement that the change made be in the best interests of the minor, be enforced if one parent does not believe the custody change would be in the minor's best interests?
>
> 3.   Did the lower courts violate HRS § 571-46.1(c)[6] by refusing to consider Mother's arguments to

---

[5]   Hawai'i Family Court Rule 54.2(a) provides:

(a) Custody and Visitation.  A proposed stipulation seeking to establish or amend provisions in a judgment or any order relating to custody or visitation of minor children will not be approved unless there is a showing that the proposal is in the best interests of the children.  Unless waived by the court, such stipulation shall be signed by both parties.

[6]   HRS § 571-46.1(c) provides:

(c) Any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order.

14

terminate joint custody by showing that the best interests of the child require termination of the order and by instead finding that Mother's relocation was not a material change of circumstances.

## II.  Standard of Review

The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard.  A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard.  COLs, consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

. . . .

Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (internal quotation marks, citations, brackets, and ellipsis omitted) (emphasis in original).

## III.  Discussion

Waldecker argues that the family court erred under both HRS § 571-46 and Hawaiʻi Family Court Rules ("HFCR") Rule 54.2 by enforcing the Divorce Decree's automatic change of custody provision and awarding O'Scanlon sole physical custody of Daughter without specifically considering or finding that the

change was in Daughter's best interests.[7]

Waldecker further argues that her relocation from Oʻahu to Florida is a material change in circumstances sufficient to warrant the family court to reexamine whether modification of custody pursuant to the provisions in the Divorce Decree would be in the best interests of the child.

We agree that the family court erred by not considering the best interests of the child as required by HRS § 571-46.

## A.   Hawaiʻi Family Court Rule 54.2(a)

Waldecker raises in her application but does not present a cogent argument that the family court's order violates HFCR Rule 54.2(a) (2000).  Waldecker has waived this argument by raising it for the first time in this court.  Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal."); see HRS § 641-2 (2014 Supp.) ("The appellate court may correct any error appearing on the record, but need not consider a point that was not presented in the trial court in the appropriate manner.").

---

[7] Neither party has questioned the jurisdiction of Hawaiʻi courts to rule on the issue of child custody, despite the Divorce Decree's provision that:  "Nevada shall retain exclusive continuing jurisdiction over issues of child custody, visitation, support and related matters."  Because we address issues of subject matter jurisdiction sua sponte, we consider this issue and conclude that under HRS §§ 583A-203(2) and 583A-201(a)(1), Hawaiʻi courts have jurisdiction to modify the custody determination of the Nevada court based upon the family court's finding in May 2014 that O'Scanlon, Waldecker, and Daughter have lived in Hawaiʻi since 2010.

Waldecker has also waived this argument by not addressing its merits.  See Tauese v. State, Dep't. of Labor & Indus. Relations, 113 Hawaiʻi 1, 26, 147 P.3d 785, 810 (2006) ("This court may disregard [a] particular contention if an appellant makes no discernable argument in support of that position.") (quotation marks and citation omitted) (alterations in original).

Moreover, even if we were to address this question, it is inapplicable to the facts presented.  HFCR Rule 54.2(a) provides:

> (a) Custody and Visitation.  A <u>proposed stipulation seeking to establish or amend provisions in a judgment or any order</u> relating to custody or visitation of minor children will not be approved unless there is a showing that the proposal is in the best interests of the children.  Unless waived by the court, such stipulation shall be signed by both parties.

(Emphasis added).

HFCR Rule 54.2(a) only applies where the parties are seeking to establish or amend provisions in a judgment or any order, and even then, only applies when the parties have stipulated to the amendment.  Here, neither is true.  The family court did not amend or establish any provision in a judgment or order.  To the contrary, the family court enforced the custody provision in the Divorce Decree exactly as written.

Thus, Waldecker's argument that the family court violated HFCR Rule 54.2(a) is waived and without merit.

17

**B. The Family Court Erred in Enforcing the Automatic Change in Custody Provision in the Divorce Decree Without Considering the Best Interests of the Child**

The next issue requires us to examine the development of the "material change in circumstances" requirement in Hawaii's case law and whether it remains applicable for the purposes of modifying a child custody order. In addition, we consider whether the family court must conduct a "best interests of the child" analysis and enter specific findings thereon.[8]

---

[8] In determining what constitutes the best interest of the child under HRS § 571-46, the court shall consider, but not be limited to, the following:

> (1) Any history of sexual or physical abuse of a child by a parent;
> (2) Any history of neglect or emotional abuse of a child by a parent;
> (3) The overall quality of the parent-child relationship;
> (4) The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;
> (5) Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; . . . .
> (6) The physical health needs of the child;
> (7) The emotional needs of the child;
> (8) The safety needs of the child;
> (9) The educational needs of the child;
> (10) The child's need for relationships with siblings;
> (11) Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; . . . .
> (12) Each parent's actions demonstrating that they separate the child's needs from the parent's needs;
> (13) Any evidence of past or current drug or alcohol abuse by a parent;
> (14) The mental health of each parent;
> (15) The areas and levels of conflict present within the family; and
> (16) A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor[.]

HRS § 571-46(b) (Supp. 2013).

It is undisputed that the Divorce Decree in this case provides for an automatic change of primary physical custody to the remaining parent in the event that one parent relocates more than two hundred miles from Oʻahu or San Francisco.[9] It is also undisputed that in February 2014, Waldecker anticipated relocating to Florida, which is more than two hundred miles from either Oʻahu or San Francisco.[10] Thus, Waldecker's arguments focus on why, despite the automatic change of custody provision in the Divorce Decree, there was a material change in circumstances that required the family court to make a determination of whether enforcement of the provision was in Daughter's best interests.

In COL 7, the family court concluded that, "to prevail on a motion to modify a custody or visitation order, as a threshold matter, the moving party must demonstrate that there has been a material change in circumstances since that prior order." In COLs 8-9, the family court concluded that generally, relocation of a parent is a material change in circumstances, but where the divorce decree specifically outlines a custody arrangement in the event of a relocation, relocation of a parent

_____

[9] The family court made this conclusion in COL 12, which Waldecker has not challenged on appeal.

[10] The family court made these findings in FOFs 16-17, which Waldecker has not challenged on appeal.

19

does not constitute a material change in circumstances.  Further, in COLs 10-11, the family court concluded that the Divorce Decree provided for the custody arrangement for Daughter in the event of a relocation, and thus there was no material change of circumstances.  It appears that because Waldecker had not shown this threshold change in circumstances, the family court did not explicitly analyze whether enforcing the change of custody provision was in Daughter's best interests.

We begin our analysis by examining the origin of the "material change in circumstances" test.  HRS § 571-46, which sets forth the criteria for awarding child custody, provides in relevant part:

> (a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.  In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>
> (1) Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court may also consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;
>
> . . . .
>
> (6) <u>Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change</u> and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award[.]

20

(Emphasis added).

There is nothing in the statute that expressly requires that a party seeking to change a custody order must demonstrate a material change in circumstances before the order can be modified.  Notably, HRS § 571-46(a)(6), which specifically addresses modification of custody, does not require a material change in circumstance--stating instead that "[a]ny custody award shall be subject to modification or change <u>whenever the best interests of the child require or justify the modification or change</u>."  (Emphasis added).  However, over time, the requirement of a material change of circumstances has developed in our case law.

In <u>Dela Cruz v. Dela Cruz</u>, 35 Haw. Terr. 95 (1939), mother brought a motion to modify a previous award of custody to father. Although she "did not answer or make any appearance" at the original custody proceeding, the circuit judge found that mother had "rehabilitated herself; is now remarried and is able to give these children a fit and proper home," and that "the remarriage of the mother and her rehabilitation constitutes sufficient change of circumstances since the entry of the Decree."  <u>Id.</u> at 96-97.  This court explained:

> In approaching the question of whether or not a decree
> of custody of a child of divorced parents should be
> modified so as to give the custody to the parent
> denied its custody upon the granting of the divorce,
> the court is confronted with the task of determining

21

> whether or not there has been such a change of circumstances that the modification will be for the good of the child.  Just what change will be sufficient to work that good varies in each particular case.

Id. at 98.

We held that the circuit judge did not err in holding that there was a "sufficient change of circumstances since the entry of the decree to warrant a consideration of whether or not it would be for the best welfare of the children to be placed in the custody of their mother[.]"  Id. at 103.  Our ruling emphasized that "the welfare of the child is in all such cases the paramount consideration."  Id. at 98.

In Dacoscos v. Dacoscos, 38 Haw. Terr. 265 (1948), father appealed from an order awarding custody of three minor children to mother.  This court explained that it was required "to ascertain whether there occurred such a change of circumstances that the replacement of custody in the father would be for the best interests of the children."  Id. at 266.  The evidence revealed that father had remarried and lived "happily," whereas mother had remarried, had two more children, divorced, and had another child with a "paramour" while working late nights as a "taxi dancer."  Id. at 266-67.  After finding that "the changed circumstances of the father are advantageous to his prospective custody," we awarded him custody consistent with "the general rule that the welfare of the child has paramount

22

consideration." Id. at 267.

In Turoff, the family court granted a father custody of a child after ten hearings held over a period of six months. 56 Haw. at 52, 527 P.2d at 1276. The next year, the mother sought a change of custody, arguing that "the change of circumstances, namely the father's transfer away from Hawai'i, necessitates a complete re-evaluation of custody, and that the only consideration is what is in the child's best interest at the present time." Id. at 53, 527 P.2d at 1277. The family court agreed that the proper consideration was what is in the child's best interest, but it also noted that the testimony from the prior proceeding was essential to the present determination. Id. As such, the family court stated that, "when the first decision was made in January of 1972, the court was aware that the father would be transferred in approximately a year, and that factor was weighed in the original determination of custody. In that sense the present situation is not a change of circumstances." Id. The family court then held that the child was receiving good care in the custody of her father, and that her best interests would not be facilitated by the transfer of her custody. Id.

On the mother's appeal, we stated that the question was "whether substantial change ha[d] occurred since the initial decision and order requiring modification or change in the award

of custody of the minor child." Id. at 55, 527 P.2d at 1278. We then held that the family court, in reviewing the evidence, "made the proper factual determinations and reached the correct legal conclusions." Id.

Importantly, although the family court found no change in circumstances in Turoff, it still considered what was in the best interests of the child at the present time. Id. Moreover, this court did not adopt a material change in circumstances requirement.

In Nadeau, the ICA considered a situation where a relocation provision provided for a change of visitation. Similar to the facts of this case, the divorce decree in Nadeau contained an automatic change of visitation provision in the event of one parent's relocation. 10 Haw. App. at 112-13, 861 P.2d at 755-56. Specifically, the decree provided for a change in visitation arrangements if the parties, who were both in the United States Navy, relocated outside the same geographical area. Id. at 113, 861 P.2d at 756. When the father relocated to the continental United States, the mother sought and received a modification of the father's visitation schedule. Id. at 114, 861 P.2d at 756. The family court reduced the father's visitation, and father appealed, arguing that his relocation was not a material change of circumstances that permitted the family

court to change the visitation schedule.  Id. at 119, 861 P.2d at 758.

The ICA held that the father's relocation was not a material change in circumstances and revised visitation consistent with the divorce decree because when the divorce decree was entered, "the family court knew that both Father and Mother would each be ordered to different duty stations within the following three years" and provided for that occurrence in the order.  Id.  The ICA agreed with the family court "that a person seeking a change of custody must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child."  Id. at 121, 861 P.2d at 759.

In Hollaway v. Hollaway, the ICA considered an appeal from the modification of a joint custody arrangement which gave "Mother sole custody regarding educational decisions made on behalf of [Son]."  133 Hawaiʻi 415, 416, 329 P.3d 320, 321 (2014).  After discussing HRS §§ 571-46 and 571-46.1(c),[11] the ICA said that "[w]hile the statutory language . . . grants family

---

[11]     The text of HRS § 571-46 is set forth supra.  HRS § 571-46.1(c), which the ICA described as "its sister statute," 133 Hawaiʻi at 421, 329 P.3d at 326, provides as follows:

> (c) Any order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child require modification or termination of the order.

courts the jurisdiction to modify a joint custody order, <u>our case law requires</u> that the party seeking modification must first make a threshold showing of material change in circumstances." <u>Id.</u> at 421, 329 P.3d at 326 (emphasis added). The ICA further noted that requiring a material change in circumstances:

> reflects the importance of the family courts' focus on the best interests of the child in evaluating proposed custodial modifications[.] <u>The prior custody order, founded as it must be on the child's best interests,</u> and including, among others, the implicit component factors of stability and security, should not be overturned lightly.[12]

<u>Id.</u> at 421 n.5, 329 P.3d at 326 n.5 (emphasis added).

As the ICA acknowledged in <u>Hollaway</u>, the requirement of a material change in circumstances is set forth in <u>Nadeau</u> and other ICA cases. <u>Id.</u> at 421, 329 P.3d at 326. It has not been adopted by this court. We conclude that the requirement of a material change in circumstances is inconsistent with HRS § 571-46. Accordingly, we overrule <u>Nadeau</u> and <u>Hollaway</u> to the extent they suggest that a material change in circumstances is required before the court can consider the best interests of the child in modifying a custody order. Rather than that two-step analysis,

---

[12] We note that in both <u>Turoff</u> and <u>Nadeau</u>, the custody orders were entered pursuant to contested family court proceedings, whereas in this case, the agreement was stipulated. Furthermore, in those cases, the relocations were certain to occur within the next few years as a result of the parents' military status. That is not the case here. Waldecker and O'Scanlon could not have predicted the nature of this relocation to such a degree of certainty. In fact, at the time of their divorce, there were no plans for relocation. As such, the Nevada court did not and could not have evaluated whether some future, unknown relocation was in the best interests of the child when it approved the parties' stipulated settlement agreement.

26

there is a single inquiry which focuses on the best interests of the child. As this court held in Dela Cruz, the question is "whether or not there has been such a change of circumstances that the modification will be for the [best interest] of the child." 35 Haw. Terr. at 98.

We acknowledge that there are legitimate interests in preventing continued relitigation of issues and reducing repetitive motions. However, the family courts have various tools at their disposal to address such situations, including the power to impose sanctions, as appropriate.

In short, jurisprudential concerns regarding repetitive motions cannot be addressed in a manner that conflicts with the requirements of HRS 571-46 that "custody should be awarded . . . according to the best interests of the child" and "any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change." HRS § 571-46(a)(1) and (6) (emphasis added). Such a conflict occurred in the instant case. Daughter is experiencing significant change in her life, as her mother has remarried and is moving to the mainland. The fact that the parties--in 2010-- attempted to account for a relocation of one of Daughter's parents does not mean that the best interests of the child had not changed. Indeed, the parties and the Nevada court did not

know in 2010 when this relocation would occur or what Daughter's circumstances would be at the time of the relocation. Waldecker's decision to relocate with her new husband required the court to consider whether, because of the "change in circumstances," modification of the custody order would be "in the best interests" of Daughter.

A custody determination should not be so inflexible as to foreclose inquiry into the best interests of the child solely based on an existing custody arrangement related to relocation that was made when neither the parties nor the court had any idea of what the circumstances of that relocation would be. The family court here did not scrutinize whether, at the time of the expected relocation, the automatic change of custody was in the best interests of the child. It should have done so, since the best interests of the child should be the "paramount consideration." Dela Cruz, 35 Haw. at 98.

Here, Waldecker and O'Scanlon's divorce decree included an automatic change of custody provision. Enforcement of the relocation provision resulted in a change from joint physical custody, to O'Scanlon receiving sole physical custody. Yet HRS § 571-46 provides that child custody shall be modified only if the best interests of the child justify a modification. Furthermore, HRS § 571-46.1(c), which governs joint custody

28

arrangements like the one in this case, provides that "[a]ny order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the <u>best interests of the child require</u> modification or termination of the order."  (Emphasis added). Thus, the family court was required to ascertain whether Waldecker's planned relocation constituted "such a change in circumstances" that modification of the custody order "would be for the best interests of" Daughter.  <u>Dacoscos</u>, 38 Haw. Terr. at 266.  Therefore, the family court erred when it awarded sole custody to O'Scanlon without considering the child's best interests.[13]

## IV.  Conclusion

We hold that the family court erred when it enforced the Divorce Decree and awarded sole physical custody of Daughter to O'Scanlon without explicitly finding that the change in custody was in Daughter's best interests.  Thus, we vacate the

---

[13]    Waldecker also argues that paragraph 6 of the Settlement Agreement is an "invalid, un-enforceable order and in can not [sic] be given full force and effect."  Waldecker failed to raise this argument before the family court, so the issue is waived.  Even if the issue had been properly raised, it would likely have been premature and dismissed on ripeness grounds.  The provision provides for "the event that [O'Scanlon] dies or becomes mentally or physically incompetent."  However, Waldecker has not alleged that O'Scanlon has died, become mentally ill or incompetent, and the record does not suggest otherwise.

ICA's February 27, 2015 judgment, and the family court's May 19, 2014 order, and remand to the family court for further proceedings.

Michael A. Glenn
for petitioner

A. Debbie Jew
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

