**Electronically Filed
Supreme Court
SCWC-14-0000895
21-OCT-2016
08:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

BRELIE GAIL BALON TUMANENG, Petitioner/Plaintiff-Appellant,

vs.

BRIXON ANDRES TUMANENG, Respondent/Defendant-Appellee.

_____

SCWC-14-0000895

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000895; FC-D NO. 12-1-7982)

OCTOBER 21, 2016

RECTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case arises out of a custody dispute regarding physical custody of B.C.B.T., born in 2006 ("Son"). Son's mother, Brelie Gail Balon Tumaneng ("Mother"), moved to modify

custody terms contained in an uncontested decree filed in her divorce from Son's father, Brixon Andres Tumaneng ("Father").

Mother alleges she should have been allowed to present evidence of Father's pre-decree domestic violence at the trial on her motion. Intermediate Court of Appeals ("ICA") precedent at the time required the Family Court of the First Circuit ("family court")[1] to find a material change in circumstances before it could reconsider the original custody order. A majority of the ICA ruled that Mother had failed to show how alleged pre-decree domestic violence related to the material change in circumstances the family court preliminarily found to exist. See Tumaneng v. Tumaneng, No. CAAP-14-0000895, at 2 (App. Oct. 26, 2015) (SDO). The ICA therefore ruled that the family court properly excluded evidence of alleged pre-decree domestic violence on relevance grounds because such evidence was not related to the material change in circumstances preliminarily found to exist by the family court, which was Father's relocation to Arizona and Mother's possible move away from Hawai'i with her new husband. Id.

In Waldecker v. O'Scanlon, 137 Hawai'i 460, 375 P.3d 239 (2016), we recently overruled several ICA cases to the extent they suggested that a material change in circumstances is

---

[1] The Honorable Sherri L. Iha presided.

required before a court can consider the best interests of a child in modifying a custody order. See id. at 470, 375 P.3d at 249. We stated, "Rather than [a] two-step analysis, there is a single inquiry which focuses on the best interests of the child." Id. We held that the requirement of a material change in circumstances is inconsistent with HRS § 571-46 (2014). See id. We also noted that "jurisprudential concerns regarding repetitive motions cannot be addressed in a manner that conflicts with the requirements of HRS 571-46 that 'custody should be awarded . . . according to the best interests of the child' and 'any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change.'" Id. (citing HRS § 571-46(a)(1), (6)) (emphasis in original).

In addition, as pointed out by Judge Ginoza in her dissent from the ICA majority in this case, HRS § 571-46(a)(9) provides that in child custody proceedings, "a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in . . . custody . . . with the perpetrator of family violence." See Tumaneng, SDO Dissent at 7 (Ginoza, J., dissenting) (discussing HRS § 571-46(a)(9)).

We therefore hold that the family court erred by excluding evidence of alleged pre-decree domestic violence in making its custody determination.  Accordingly, we remand this case to the family court for further proceedings consistent with this opinion.

## II.  Background

### A.  Factual Background

Son was born in 2006.  At the time of his birth, both Mother and Father had not finished high school.  Son lived with Mother and her parents; Father visited after school.  Mother and Father married on August 19, 2008, but Father still did not live with Mother and Son.  Father enlisted in the Air Force in early 2010.  When Father was stationed in Japan later that year, Mother and Son joined him.  In 2012, Father remained in Japan and Mother and Son returned to Hawai'i from Japan.

After returning to Hawai'i, Mother filed for divorce on December 13, 2012, and asked that physical custody of Son be awarded solely to her.  In his answer, Father indicated that he and Mother had agreed that she would have temporary physical custody of Son, but that he intended to take physical custody of Son should he be stationed in the United States.  He stated that he sought physical custody due to Mother's alleged marital infidelity, stating that he would be providing a witness statement regarding this allegation.

4

About three weeks later, on January 3, 2013, Mother signed Father's proposed uncontested divorce decree, which was later approved by the family court and filed on April 4, 2013 ("Decree").  The Decree provided that physical custody of Son would be temporarily awarded to Mother until September 2013 then permanently to Husband after September 2013.  Details regarding time sharing were reflected in a Proposed Parenting Plan ("Plan") also prepared by Father and signed by both parents.  The Plan stated that physical custody of Son should be awarded to Father after his relocation to the U.S. and that Mother should have visitation every other weekend from Friday at 2:00 p.m., to Sunday at 6:00 p.m.  Further, the Plan provided that time with Son during vacations and school breaks would be split in half between Mother and Father, and that each parent would have half the day on Son's birthdays.  The "out-of-state visitation" space was left blank.

Two months after the April 4, 2013 Decree, Mother remarried a servicemember who was scheduled to be re-stationed in Germany, although it was unclear whether she also intended to leave Hawai'i.

**B.    Post-decree Motion to Modify Custody Arrangement**

On August 7, 2013, four months after the Decree, the family court received Mother's pro se Motion and Declaration for Post-Decree Relief ("Motion").  Mother requested a change to give her

physical custody of Son, alleging that circumstances had changed (as required by the form) because Father planned to move Son out of O'ahu to Arizona in October 2013. She asserted that he was a single father and that she had visitation rights.

Mother also requested an expedited hearing, but this request was denied on August 22, 2013. On October 9, 2013, Father responded pro se to Mother's Motion through a letter dated October 7, 2013. The letter alleged that Mother had been aware of the relocation and requested that custody arrangement in the Decree not be changed. Father also filed a "Proposed Parenting Plan (After Relocation)," suggesting changes to Mother's visitation schedule.

On October 15, 2013, Mother filed a pro se ex parte motion to prevent Father from relocating Son. Mother noted that the original Decree did not state that Son would be relocated. She asserted that she had agreed to full custody to Husband because she had been "afraid and confused." She indicated she was trying to regain full custody of Son. She noted that the Decree had provided her with regular time sharing, but that Father had said he would be relocating with Son to Arizona on October 21, 2013. The family court ordered that Son not be removed from the state until Mother's Motion was decided.

Mother then retained counsel, and filed a declaration on October 22, 2013, stating in part:

6

5.    [Father] for a long time had only part time jobs, but in March of 2010 he joined the military.  In September of 2010 he was stationed in Japan.  In October of 2010, [Son] and I went to Japan to join him.

6.    While we were in Japan, I was always the one who took care  of [Son].  [Father] never bathed him or fed him or put him to bed.

7.    It was very difficult for us in Japan, as [Father] would often hit me and I would have to leave the house, quickly so I would not be hurt further, and if I had time I always tried to take . . . [Son] with me so he would be safe, but sometimes I was forced to leave him behind, I was so scared.

8.    I spoke to my mother and she told me to come home, since there was no reason for me to stay there and let him hit me all the time.

9.    [Son] and I returned to Hawaii in September of 2012 and moved back in with my mother.

The affidavit contained additional information regarding pre-decree circumstances, such as Son's living arrangements from birth, and also included an allegation that Father had forced her to sign his version of the Decree by telling her she would never see Son again if he told the judge about her alleged infidelity.

Mother, with counsel, appeared at a November 6, 2013 hearing before the family court to determine whether a material change of circumstances existed that would allow modification of the custody arrangement contained in the Decree.  Father appeared pro se by telephone.  Mother testified that she had signed the Decree requiring her to hand over physical custody of Son because she felt threatened by Father's answer indicating he would take Son away from her forever.  Father indicated that

7

although he had hoped for a new duty station in Hawai'i, there had been no guarantee it would happen.  Upon hearing testimony from both Mother and Father, the court preliminarily found a material change in circumstances, i.e., Father's relocation to Arizona as well as Mother's possible move away from Hawai'i with her new husband the following year.  The family court ruled that the case would proceed to trial because of the material change in circumstances.

At the March 3, 2014 trial, both Father and Mother appeared with counsel.  Before the family court received testimony, Father's counsel argued that "certainly no evidence under the Nadeau[2] decision prior to the last custody order is relevant to today's proceeding. . . .  The Court must confine the evidence, we believe at least, to everything that occurred since April the 4th, 2013 . . . ."  The family court treated the oral motion as a motion in limine, and granted it, stating, "Basically on this point there was a prior custody decree and we found that there was a material change in circumstance since then.  So the evidence will be limited to what happened since April 4th, 2013."  Although Mother's counsel did not refer specifically at that time to domestic violence allegations, he objected to the

---

[2] Nadeau v. Nadeau, 10 Haw. App. 111, 861 P.2d 754 (1993).

exclusion of pre-decree evidence based on Father's mentioning of pre-decree allegations in his pre-trial memorandum.

Accordingly, based on the family court's pre-trial evidentiary ruling, evidence regarding factual circumstances existing before April 4, 2013, including evidence regarding Mother's claims that Father physically abused her in Japan, was precluded from the trial.  At trial, the family court received evidence that included various exhibits and testimony from Mother, Mother's mother, and Father regarding the parents' respective abilities to care for Son.  During closing arguments, Mother's counsel urged:

> [Mr. Fanelli:]    And you know, we weren't allowed -- we were precluded from testifying or discussing matters that happened prior to April 4th.  There is a history between these two that would perhaps lend a little more --
> Mr. Diehl:         Objection.
> Mr. Fanelli:       Withdrawn.
> Mr. Diehl:         And you know, he's done his closing.
> The Court:         And Mr. Fanelli, basically everything you've said so far -- I mean, this is not a motion to set aside the decree.
> Mr. Fanelli:       I understand.
> The Court:         We're here to determine what's in the best interest of the child post-decree.
> Mr. Fanelli:       Yes, Your Honor.

At the conclusion of the trial, the family court granted sole physical custody of Son to Father.  The family court filed an order on April 14, 2014 awarding Father sole physical custody of Son effective May 30, 2014.  The order also addressed time sharing during Son's school breaks and vacations, awarded Mother temporary physical custody if Father was deployed, and stated

that if Mother and Father resided in the same locale in the future, the parties would be awarded joint physical custody.

On April 24, 2014, Mother, through new counsel, filed a motion for reconsideration pursuant to Hawai'i Family Court Rules ("HFCR") Rule 59, requesting a new trial because the family court's preclusion of pre-decree evidence had prevented evidence of Father's family violence and abuse of Mother during the marriage from coming to light, "which should have been considered by the Court in making a decision regarding physical custody."  Without a hearing, the family court denied the motion for reconsideration on May 20, 2014.

The family court entered Findings of Fact and Conclusions of Law on August 6, 2014.  Among other things, the family court found and concluded that: (1) the Decree filed on April 4, 2013 awarded Father sole physical custody of Son in September 2013, (2) relocation was contemplated at the time of the divorce, (3) Mother failed to establish a material change in circumstance since Father's relocation back to the United States and subsequent new assignment was contemplated at the time the Decree was entered, (4) Mother did not have a history of stable employment, often went out to bars and left Son with his grandmother, had been hospitalized for intoxication[3] and

---

[3]  Mother's counsel objected to Father's counsel's reference to the incident in his closing argument, arguing that it occurred before the April 4, 2013
(continued . . .)

10

arrested[4] for trespassing, (5) Father was an active duty servicemember stationed near Tucson, Arizona, had always been a consistent nurturing caregiver, and had demonstrated that he was better able than mother to provide a safe, loving and nurturing home for Son, and (6) even if Father's reassignment outside of Hawaiʻi had not been contemplated and the court were to find that Father's relocation to Arizona was a material change in circumstances, it was still in Son's best interest to live with Father.

## C.  Appeal to the ICA

Mother filed a notice of appeal to the ICA as to both the April 14, 2014 order on her Motion and the May 20, 2014 order denying her motion for reconsideration.  She asserted two points of error, the first of which serves as the basis of her present Application, that the family court erred when it excluded evidence prior to April 4, 2013.[5]

---

(. . . continued)
Decree.  The trial transcript does not reflect when this incident allegedly occurred, but it was represented in Father's trial memorandum that it occurred in January 2013.  The family court overruled the objection.

[4]  Mother testified that she was "ticketed."

[5]  The second point of error was, "[t]he Family Court committed plain error in awarding child custody without making any findings regarding the best interest of the child."  Mother's reply brief acknowledged, however, that the family court did address the best interests of the child in conclusions of law ("COL") 1 and 4.  Mother nevertheless continued to assert error because the statements were identified as COLs and not findings of fact ("FOF").  The ICA found Mother's argument to be without merit because COL 6 stated, "To the extent that any [FOF] herein may be a [COL], it shall be so construed.  To the extent that a [COL] herein may be a [FOF], it shall be so construed."

(continued . . .)

In its October 26, 2015 Summary Disposition Order ("SDO"), the ICA majority ruled based on cases subsequently overruled by Waldecker that "[u]pon a finding of a material change, the relevant inquiry is whether the material change itself is sufficient to alter the best interests of the child," and therefore Mother "was required to show that the evidence of domestic violence prior to the divorce decree was related to [Father's] pending relocation to Arizona." Tumaneng, SDO at 2. The ICA found no error because Mother did not show such a relationship. See id. The ICA stated that the family court's evidentiary ruling was not based on the principles of res judicata, but rather was "based on the relevance of the evidence under [HRE] Rule 402." Id.

Judge Ginoza dissented on the basis that the family court abused its discretion when it denied Mother's request for a new trial within her motion for reconsideration, as there existed good cause for granting Mother's request. See Tumaneng, SDO Dissent at 4 (Ginoza, J., dissenting). She explained:

> Given the circumstances in this case, where the family
> court did not previously have occasion to consider family
> violence and Mother was unrepresented when the Divorce
> Decree was entered, I believe evidence of family violence
> should have been considered in determining the best

---

(. . . continued)
Tumaneng, SDO at 3. Further, what was in the best interest of Son was a "mixed question of law and fact," and "[t]he family court's characterization of its determination as a 'COL' rather than a 'FOF' does not mean the family court awarded custody of Son without considering the best interest of the child. Id. The Application does not challenge this portion of the ICA's SDO.

12

> interests of [Son] and whether to modify custody, even if the evidence pertained to incidents prior to the Divorce Decree.

Id. at 8.

## D.    Application for Writ of Certiorari

Mother presents three questions to this court:

> [1].  Did the Intermediate Court of Appeals commit grave error of fact or law in holding that evidence of domestic violence which occurred before an earlier award of custody must be related to a material change of circumstances to be considered on a motion for change or modification of custody pursuant to HRS § 571-46(a)(6)?
>
> [2].  Did the Intermediate Court of Appeals commit grave error of fact or law in holding that evidence of domestic violence which occurred before an earlier award of custody must be related to a material change of circumstances to be considered on a motion for change or modification of custody pursuant to HRS § 571-46(a)(6), where the issue of custody was not previously fully litigated and adjudicated by the court?
>
> [3].  Did the Intermediate Court of Appeals commit grave error of fact or law in holding that evidence of domestic violence which occurred before an earlier award of custody must be related to a material change of circumstances to be considered on a motion for change or modification of custody pursuant to HRS § 571-46(a)(6), where the prior order awarding custody was based upon an uncontested stipulation allegedly obtained by fraud and/or duress or from a moving party who was previously unrepresented by counsel?

All three questions assert that the family court erred in excluding evidence of domestic violence that had allegedly occurred before April 4, 2013.  We address this issue in Section IV below.

### III.  Standard of Review

"A trial court's determination that evidence is 'relevant' within the meaning of HRE Rule 401 (1993) is reviewed under the right/wrong standard of review."  State v. St. Clair, 101 Hawai'i

13

280, 286, 67 P.3d 779, 785 (2003).  HRE Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawai'i, by statute, by these rules, or by other rules adopted by the supreme court.  Evidence which is not relevant is not admissible."

## IV.  Discussion

### A.   Child Custody Determinations Must Be Based on the Best Interests of the Child, and a Material Change in Circumstances is not Required to Modify a Child Custody Order

We note at the outset that the family court applied ICA cases binding on it at the time, which required a threshold showing of a "material change in circumstances" before a change in a child custody order could be considered.  In Waldecker, 137 Hawai'i 460, 375 P.3d 239, we overruled the cases cited by the ICA in its Summary Disposition Order to the extent they suggested that a material change in circumstances is required before a court can consider the best interests of a child in modifying a custody order.  See id. at 470, 375 P.3d at 249.

We addressed HRS § 571-46, which provides as follows with respect to the family court's modification of a custody order:

> **Criteria and procedure in awarding custody and visitation; best interest of the child.** (a) In actions for divorce, . . . or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action . . . or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>     (1)  Custody should be awarded to either parent or to both parents according to the best interests of the child . . . . ;
>     (6)  Any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change and, wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award. . . .

In Waldecker, construing HRS § 571-46, we stated, "Rather than [a] two-step analysis, there is a single inquiry which focuses on the best interests of the child. . . . [T]he question is 'whether or not there has been such a change of circumstances that the modification will be for the [best interest] of the child.'" Id. (citation omitted) (brackets in original). We held that the requirement of a material change in circumstances is inconsistent with the statute. See id. We also noted that "jurisprudential concerns regarding repetitive motions cannot be addressed in a manner that conflicts with the requirements of HRS 571-46 that 'custody should be awarded . . . according to the best interests of the child' and 'any custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification

15

or change.'" Id. (citing HRS § 571-46(a)(1), (6)) (emphasis in original).

Pursuant to HRS § 571-46, as construed in Waldecker, the family court was required to consider all evidence relevant to the issue of whether modification of the Decree would be in the best interests of the child. In this case, pre-decree evidence was clearly relevant to this determination. Therefore, the family court erred by excluding pre-decree evidence to ascertain Son's best interests.[6] Although Mother's application is based solely on the exclusion of pre-decree domestic violence evidence, on remand, pursuant to HRS § 571-46 and Waldecker, other pre-decree evidence may be relevant to Son's best interests.

**B. In Determining the Best Interests of the Child, the Family Court Must Consider Evidence of Domestic Violence and Apply the Rebuttable Presumption of HRS § 571-46(9)**

This case also presents the specific question of whether the family court erred by excluding all pre-decree evidence of domestic violence. In this regard, HRS § 571-46(9) and (10) provided at the times relevant to this case as it does now:

> (9) In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of

---

[6] The family court compounded the error by considering pre-decree evidence adverse to Mother while excluding evidence of Father's domestic violence, as well as other relevant circumstances of Son's upbringing.

16

the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence.  In addition to other factors that a court shall consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:

  (A)  The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;

  (B)  The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and

  (C)  If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;

 (10)  A court may award visitation to a parent who has committed family violence only if the court finds that adequate provision can be made for the physical safety and psychological well-being of the child and for the safety of the parent who is a victim of family violence . . . .

We also note that HRS § 571-2 (Supp. 2014) defines "family violence" as:

the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:

(1)  Attempting to cause or causing physical harm to another family or household member;
(2)  Placing a family or household member in fear of physical harm; or
(3)  Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

We note that this definition of "family violence" is not limited to physical acts of domestic violence, which are alleged by Mother in this case, but also includes non-physical acts, such as threats.

HRS § 571-46(9) requires that the family court address whether "family violence has been committed by a parent" in "every proceeding" at which a court considers a "dispute as to

17

the custody of a child."  The statute imposes a "rebuttable

presumption that it is detrimental to the child and not in the

best interest of the child to be placed in . . . custody . . .

with the perpetrator of family violence."  Id.  Indeed, the

legislature mandates the court to "consider the perpetrator's

history of causing physical harm, bodily injury, or assault or

causing reasonable fear of physical harm, bodily injury, or

assault to another person."  HRS § 571-46(a)(9)(A).

As we noted in Doe v. Doe, 98 Hawai'i 144, 44 P.3d 1085

(2002):

> A determination of family violence bears directly
> upon the best interests of the child, as indicated in HRS §
> 571-46(9), which provides that, when a determination of
> family violence is made by the family court, a rebuttable
> presumption is created that custody should not be placed
> with the perpetrator[.]
> . . . .
> Father was allowed to testify and present all of his
> witnesses to the court. Mother testified, but the court did
> not hear from any of her other witnesses, in particular,
> those who would have testified, according to their
> affidavits, about Father's alleged abuse of Mother and its
> related effect on Child. Evidence supporting such
> allegations was pertinent to whether Father should have
> sole legal and physical custody of Child.

Id. at 156, 44 P.3d at 1097 (citations omitted).

Doe highlights the importance of considering all testimony

relevant to allegations of domestic violence in custody

determinations.  In this case, the family court did not allow

any evidence of domestic violence in its custody determination.

The custody arrangement set out in the Decree was in an

uncontested divorce filing, with no hearing before the family

court. Although the family court had approved the Son's custody arrangement in the Decree, in her post-decree Motion, Mother alleged coercion and duress regarding the original "agreement." In addition, a clear dispute between Mother and Father over Son's custody arose when Mother filed her Motion. The March 3, 2014 trial was the first proceeding at which the family court, under HRS § 571-46(9), had occasion to receive evidence and consider the issue of whether family violence was committed by Father, and what custody arrangement was actually in Son's best interests.

As noted in Doe, the statute sets out clear guidelines regarding custody decisions when a determination of family violence is made. The legislature's intent to require family courts to address issues of family violence in determining child custody and visitation decisions is clear on the face of the statute. In enacting HRS § § 571-46(9) and (10) in 1996, the legislature also stated:

> Because current laws relative to child custody and visitation are based on an assumption that . . . divorcing parents are in relatively equal positions of power and that such parents will act in the children's best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. . . .

1996 Haw. Sess. Laws Act 198, § 1 at 450. Therefore, in order to determine Son's actual best interests as mandated by HRS § 571-46, the family court was required to address the specific

and direct allegations of domestic violence in this case before making its custody determination.

### V. Conclusion

For these reasons, we vacate the family court's April 14, 2014 order on Mother's Motion, its May 20, 2014 order denying Mother's motion for reconsideration, and its August 6, 2014 Findings of Fact and Conclusions of Law. We also vacate the ICA's October 26, 2015 Summary Disposition Order and November 23, 2015 Judgment on Appeal. We remand this case to the family court for further proceedings consistent with this opinion.

Charles H. Brower
for petitioner

Richard J. Diehl
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



20