### Richmond

ROBERT TRAVIS ARMISTEAD, JR.

V.

RUTH ANN FOSTER JOHNSON ARMISTEAD

Record No. 832009.

November 30, 1984.

Present: All the Justices.

*Harry J. Kostel (Jones, Blechman, Woltz & Kelly, P.C.,* on briefs), for appellant.

*Marged G. Harris (Stephens & Harris,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This is a custody dispute involving a six-year-old girl, Judith Page Armistead (Judith), the daughter of Robert Travis

Armistead, Jr. (Travis), and Ruth Ann Foster Johnson Armistead (Ruth). Travis appeals from a decree awarding Judith's custody to Ruth.

Travis and Ruth were married March 20, 1976. Judith was born August 29, 1978. Travis and Ruth separated March 16, 1980, and were divorced by final decree entered September 3, 1981.

The decree confirmed a property settlement agreement dated December 5, 1980, and an amended agreement dated August 31, 1981. At the time the agreements were executed and on the date the decree was entered, the parties resided in Williamsburg.

Under the December 5, 1980 agreement, Ruth was given custody of Judith, with reasonable rights of visitation reserved to Travis. Under the amended agreement, Ruth would "retain custody" until she removed her domicile from Williamsburg, but, upon such removal, Travis would have custody for one month and then the parties would make a good faith effort to settle the custody question. If the settlement effort failed, the matter of custody would be decided by the trial court. Pending such decision, Judith would not be removed from the jurisdiction of the court and Travis would "retain custody . . . until changed by mutual agreement or Court Order."

About October 1, 1981, Ruth moved to Henrico County. Judith remained in Williamsburg with Travis, according to the terms of the August 31, 1981 amended agreement.

On December 23, 1981, Ruth married Charles Moore. She then wrote to Travis requesting that he return Judith to her by January 16, 1982, "at the very latest." When Travis refused, Ruth asked the trial court for a hearing, and the matter was set for June 10, 1982. Following a hearing on that date, the chancellor awarded Ruth temporary custody of Judith, with reasonable rights of visitation reserved to Travis. The chancellor directed the Henrico County Department of Social Services to monitor Ruth's "home situation" and ordered the parties to return to court the following October "for review of custody."

Travis filed a motion for rehearing, which the trial court granted. The matter was reheard on October 13, 14, and 15, 1982. While the hearing was in progress, the chancellor declared a recess, following which the parties advised the court that they had reached an agreement concerning custody. The agreement was

presented to the court in the form of a consent decree, which was entered October 26, 1982.

The decree provided that Travis and Ruth would have joint custody of Judith and that the child's primary residence would be with Ruth from October 14 through October 29, 1982, with Travis from October 30 through December 31, with Ruth from January 1 through April 1, 1983, with Travis from April 2 through July 1, and with Ruth from July 2 through August 27. The decree provided further that the parties would make a good faith effort in June, 1983, "to settle the matter of the continuing custody arrangement for the period following August 27, 1983." The cause was continued "for further hearing" in the event the parties were unable to agree on Judith's future custody.

On August 23, 1983, the parties returned to court and advised the chancellor they had been unable to agree on Judith's custody. Counsel for Travis told the chancellor he had received information that Ruth planned to move to Louisiana, where her husband had accepted a teaching position, and that she wanted to take Judith with her for the school year, an arrangement which was unsatisfactory to Travis.

After the witnesses were sworn, Ruth's counsel moved to "limit the testimony to circumstances surrounding the child and the family environment at this time." Following argument, the chancellor granted Ruth's motion and ruled that the hearing would be limited to "[w]hat the present situation is and anything that has transpired since October 15, 1982," the date of the last hearing in the case.

Counsel for Travis then was permitted to make a proffer of what he would have submitted had the hearing not been limited. Several times during the proffer, Ruth's counsel interrupted and represented to the court that the matter proffered had been introduced in prior hearings. At one point, the chancellor observed that counsel for the parties were "in a better position than the Court to recall what is in the evidence" and appeared to agree with Ruth's counsel that Travis's proffer consisted of evidence already introduced.

Following the proffer, the chancellor proceeded to hear evidence limited to the period subsequent to the hearing of October, 1982. At the conclusion of the evidence and argument of counsel, the chancellor awarded Judith's custody to Ruth, with reasonable

rights of visitation reserved to Travis. The award was embodied in the decree appealed from.

While Travis has assigned several errors, the determinative question, in our opinion, is whether the chancellor erred in limiting the evidence at the hearing on August 23, 1983. Travis argues that the limitation deprived him of relevant evidence on the crucial question of what custodial disposition would be in Judith's best interests.

Ruth argues, on the other hand, that a trial court may properly limit the evidence to "that which [is] relevant to the issues to be decided." Here, Ruth says, the chancellor concluded that no useful purpose would be served by "going over again events which had occurred prior to [the] ruling of October 15, 1982." In any event, Ruth maintains, the chancellor based his final decision on "the multitude of evidence" introduced in the earlier hearings as well as in the August, 1983 hearing.

■ In limiting the evidence at the August, 1983 hearing, the chancellor apparently accepted the argument Ruth then made that the October, 1982 agreement and decree "laid to rest once and for all" any question of her fitness as a parent. The October, 1982 agreement and decree, however, constituted only a temporary, and not a permanent, disposition of custody. Indeed, the arrangement was apparently regarded by the parties as a mere experiment, with which neither party was satisfied in the end. Hence, the October, 1982 agreement and decree were not entitled to conclusive effect on the paramount question before the court at the August, 1983 hearing, *viz.,* in whose custody Judith's welfare would best be served.

■ Furthermore, we do not agree with the representation made to the chancellor by Ruth's counsel that Travis's proffer consisted solely of evidence already in the record. Counsel may have misspoken in this regard because part of what Travis proffered was contained in discovery depositions given by Ruth in June and August, 1982. These depositions had not been introduced into evidence previously; hence, Travis's proffer was not merely cumulative. Yet, because the depositions were given prior to the October, 1982 hearing, the chancellor refused Travis permission to introduce them into evidence in whole or in part or to use them to impeach Ruth's testimony at the August, 1983 hearing. This refusal clearly was erroneous. Rule 4:7(a)(2), (3); *Horne* v. *Milgrim,* 226 Va. 133, 138, 306 S.E.2d 893, 895 (1983).

■ Neither are we at all satisfied that Ruth is correct when she says the chancellor considered the evidence previously introduced in reaching his final decision in this case. Significantly, in an oral opinion delivered from the bench, the chancellor began his discussion with the hearing held October 13-15, 1982, and the agreement and decree which resulted from that hearing. He then developed the thesis that in the October, 1982 agreement and the other agreements involved in the case, Travis had recognized Ruth as "a proper parent" and had "persisted" in "this attitude." This, in our opinion, clearly indicates that the chancellor deemed the October, 1982 agreement and decree to have some sort of conclusive effect sufficient to estop Travis from questioning whether Ruth was "a proper parent."

As we have demonstrated previously, however, the October, 1982 disposition of custody was only temporary, at best. In such a situation, the doctrine of estoppel obviously is out of place.

We conclude, therefore, that in limiting the scope of the August, 1983 hearing, the chancellor excluded evidence which may have been relevant to the determination of Judith's best interests. Remaining is the question of appropriate relief.

■ In *Keel* v. *Keel,* 225 Va. 606, 613, 303 S.E.2d 917, 922 (1983), involving similar circumstances, we said:

> It would serve no useful purpose for us to examine the evidence bit by bit to determine what was relevant and what was not. Suffice it to say that we are convinced from the record that the most appropriate action is for the trial court to reexamine all the evidence in light of this opinion.

Adapting *Keel* to fit the situation at hand, we hold that, upon remand, the chancellor should consider all the evidence already in the record as well as any new evidence the parties may submit relevant to the determination of Judith's best interests. Accordingly, we will reverse the decree appealed from and remand the case for further proceedings.

*Reversed and remanded.*