Electronically Filed
Supreme Court
SCAP-17-0000539
30-JUL-2018
08:33 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

W.N., Petitioner-Appellant,

vs.

S.M., Respondent-Appellee.

SCAP-17-0000539

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CAAP-17-0000539; FC-M NO. 14-1-0034K)

JULY 30, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

## I.    INTRODUCTION

In our previous decision in this case, A.A. v. B.B.,
139 Hawaiʻi 102, 384 P.3d 878 (2016), we vacated the final
judgment of the family court denying the petition of A.A.
(hereafter W.N.) for joint custody of a minor child with B.B.
(hereafter S.M.).  The case was remanded to the family court
with instructions that it determine whether W.N. established a

prima facie case of de facto custody, and if so, that the court render a custody award in the child's best interest.

On remand, the family court entered an order without holding a further evidentiary hearing or taking additional evidence in which it found that W.N. was not a "fit and proper person" as required to establish a prima facie entitlement to custody of the minor child. W.N. appealed the family court's adverse ruling, and the request to transfer the case to this court was granted. We conclude that the family court erred in not holding a further hearing to ascertain whether W.N. is presently a fit and proper person and whether a custody award would be in the minor child's present best interests. Accordingly, we vacate the family court's 2017 Order and remand the case for a further evidentiary hearing consistent with this opinion. We also provide guidance as to evidentiary matters that may arise on remand.

## II.   FACTS AND PROCEDURAL HISTORY

W.N. and S.M. entered into a committed relationship in March 2009. In 2011, W.N. and S.M. jointly decided to bring S.M.'s newborn biological granddaughter (Child) into their home to raise her as their daughter. S.M. legally adopted Child, and S.M. and W.N. jointly shared parental care, duties, and responsibilities for Child. W.N., S.M., Child, and S.M.'s teenage son (Son) lived together as a family unit from October

2011 until October 2013.  In October 2013, W.N. and S.M. separated, and they entered into a written 50/50 co-parenting agreement for Child.  In April 2014, S.M. sent W.N. a letter declaring that he was revoking the 50/50 co-parenting agreement on the basis that it was his parental right to do so.

In May 2014, W.N. filed a petition in the Family Court of the Third Circuit (family court) seeking joint legal and joint 50/50 physical custody of Child (custody petition) pursuant to Hawaii Revised Statutes (HRS) § 571-46(a)(2) (Supp. 2013).[1]  W.N. asserted that he was the de facto parent of Child and was a fit and proper person to have care, custody, and control of Child.  S.M. sought dismissal of the custody petition

_____

[1]     HRS § 571-46(a) provides in relevant part as follows:

(a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper.  In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

(1) Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;

(2) Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child.  Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall be entitled prima facie to an award of custody[.]

contending that W.N. was a legal stranger to Child, that HRS § 571-46(a)(2) was unconstitutional, and that W.N. had no standing before the family court.

On October 3, 2014, the family court held an evidentiary hearing on the custody petition (2014 Hearing).[2] Scott and Janet Crosier (collectively, the Crosiers) testified that each had supervised visitations between W.N. and Child, and they favorably described the interactions between W.N. and Child. W.N. sought to introduce the visitation reports into evidence that the Crosiers had each prepared contemporaneously with the supervised visitations. The family court sustained S.M.'s objections to their admission because they contained hearsay statements of Child, rejecting W.N.'s argument that the statements were not offered for the truth of the matter asserted by Child. The court also sustained S.M.'s foundation objections to the Crosiers using their respective visitation reports to refresh their recollections. As to Janet Crosier, W.N. proffered that the reports would aid her in recalling Child's behaviors and interactions with W.N. that she could not remember.

Dr. Jamuna Wyss, who was qualified as an expert in parent-child psychological relationships and parenting styles,

---

[2] The Honorable Melvin H. Fujino presided.

4

testified that he taught W.N. parenting techniques. Dr. Wyss testified favorably as to W.N.'s relationship with Child. He also testified that Child would likely suffer "damaging psychological consequences" if W.N.'s relationship with Child was terminated. W.N.'s counsel asked Dr. Wyss if he was aware of any sexual abuse allegations against W.N. and sought to introduce a letter written by Dr. Wyss to Child Welfare Services. The court sustained S.M.'s objection to the admission of the letter and did not allow Dr. Wyss to testify as to his opinion on the allegations because it was outside the scope of his April 25, 2014 clinical note (clinical note).[3] Dr. Wyss then testified generally that he did not believe W.N. posed any threat to Child.

Additionally, W.N. sought to introduce progress notes from his individual therapy sessions with Dr. Wyss, as well as S.M. and W.N.'s couples therapy sessions with Dr. Wyss. The court again sustained S.M.'s objection to the introduction of the progress notes as outside the scope of Dr. Wyss's clinical note. Further, Dr. Wyss testified that he taught W.N. anger

---

[3]     S.M.'s counsel objected on the basis that the parties agreed to exchange reports prepared by the expert witnesses prior to the hearing and as such, the testimony should be limited to Dr. Wyss's report--the April 25, 2014 clinical note. The record does not contain an on-the-record pretrial ruling limiting expert testimony to the contents of the experts' reports.

management techniques[4] and related that, in his opinion, W.N. had made progress on anger management.[5]

Dr. Jennifer De Costa, a family counselor and a licensed marriage and family therapist, was called by S.M. and qualified as an expert in family behavior and relationships. Dr. De Costa testified that she had treated Son and regularly used written tests to assess Son's depression and anxiety in treatment. Dr. De Costa stated that she observed a correlation between fluctuations in Son's test scores and his interactions with W.N. S.M. asked Dr. De Costa if Son had displayed "extreme regression" since W.N. began visitation with Child, and Dr. De Costa responded affirmatively.

Dr. De Costa testified that she also met with Child and initially had no concerns as to Child's development. After visits started with W.N., however, Dr. De Costa stated that Child began to exhibit "some regressive behaviors." Dr. De Costa answered "yes" when asked hypothetically whether she would have concerns about Child having a custodial relationship with W.N. given his anger management problem, her knowledge of W.N.'s relationship with Son, and Child's regressive behaviors. Dr. De

___

[4]     W.N. testified that his anger management problem is characterized by raising his voice, swearing, and walking away to cool off.

[5]     Dr. Wyss indicated that his opinion on W.N.'s anger management progress relied on W.N.'s self-reporting.

Costa further testified that she did not think that termination of the relationship would harm Child.

S.M. also called W.N.'s sister, C.N., to testify. C.N. testified that she had concerns about W.N.'s temper, which she had expressed to S.M., and that W.N.'s behavior had not improved.

After the parties' arguments, the family court ruled that W.N. had not shown a compelling state interest as to why the de facto custody presumption of HRS § 571-46(a)(2) should apply to him under a strict scrutiny standard. The family court denied the custody petition and allowed S.M. to stop all visitations. On December 11, 2014, the family court entered findings of fact, conclusions of law, and its final judgment on the custody petition.

W.N. appealed, and following transfer of the case to this court, we held that application of HRS § 571-46(a)(2) would not infringe upon S.M.'s fundamental liberty interests or right to privacy under the Hawai'i Constitution, and that W.N. was therefore not required to establish a compelling state interest as a prerequisite for the family court to make a de facto custody determination. A.A. v. B.B., 139 Hawai'i 102, 108, 113-16, 384 P.3d 878, 884, 889-92 (2016). We noted that the record may support a finding that W.N. satisfied all elements of HRS § 571-46(a)(2), which would invoke the de facto custody

presumption.  Id. at 107 n.8, 384 P.3d at 883 n.8.

Additionally, although this court held that any error by the

family court in restricting Dr. Wyss's testimony or excluding

the progress notes was harmless under the circumstances, we

stated that "if further evidentiary proceedings are held on

remand, the family court may revisit its ruling regarding the

proffered evidence."[6]  Id. at 116 n.23, 384 P.3d at 892 n.23.  We

vacated the final judgment denying W.N.'s custody petition and

remanded the case to the family court with instructions that the

court determine whether W.N. met the requirements for a de facto

custody presumption pursuant to HRS § 571-46(a)(2), and if so,

for a custody award in the child's best interest.  Id. at 116-

17, 384 P.3d at 892-93.

At a status conference following remand, the family

court indicated that it would limit its review to the existing

record and invited the parties to provide briefing on whether it

had authority for such limitation.[7]  W.N. submitted a memorandum

arguing that there was sufficient evidence in the record to

determine that he met the elements for a de facto custody

---

[6]     As to other evidentiary issues raised by W.N., this court held
that Dr. De Costa was properly qualified as an expert in her field and the
family court did not err in accepting her testimony.  A.A., 139 Hawai'i at 116
n.23, 384 P.3d at 892 n.23.

[7]     The Honorable Kanani Laubach presided over the proceedings on
remand.

presumption and that an award of joint custody of Child to him would be in the best interests of Child. In the alternative, if the family court did not find that there was sufficient evidence to establish a de facto custody presumption, W.N. argued that an evidentiary hearing was necessary to supplement the 2014 Hearing record. In support, W.N. contended that his arguments and evidence presented at the 2014 Hearing were not focused on the elements of HRS § 571-46(a)(2) because the family court requested briefing on whether W.N. had a constitutional right and a statutory basis to assert a custodial claim.

W.N. maintained that it would be error for the family court to conclude that he failed to meet his burden to establish that he is a "fit and proper person" without an opportunity to supplement the record, particularly in light of this court's observation that the record may support a finding that W.N. met all the elements of HRS § 571-46(a)(2). W.N. also argued that the family court foreclosed him from presenting evidence from Dr. Wyss to rebut allegations of sexual abuse that were used to determine W.N.'s fitness for custody. W.N. further argued that it would be a manifest injustice for the family court not to consider new evidence on remand regarding W.N.'s fitness for custody. As an offer of proof, W.N. stated that since the 2014 Hearing, he had obtained a State of Hawaii Department of Human

Services foster care license, for which he underwent a psychosexual evaluation.

S.M. filed a memorandum in support of limiting the family court's review on remand to the existing record. S.M. argued that whether or not W.N. was a fit and proper person must be determined as of the date of the 2014 Hearing because considering new evidence on remand would improperly afford W.N. a "second bite of the apple" and an opportunity to present improvements to "his situation" in order to increase his fitness for custody. Prior to holding a new evidentiary hearing, S.M. argued, the family court should determine from the existing record whether W.N. satisfied the elements of HRS § 571-46(a)(2) for a de facto custody presumption.

The family court ruled that it would base its review on the 2014 Hearing record to determine whether W.N. was entitled to a de facto custody presumption. The court stated that it would afford the parties an opportunity to raise any evidentiary objections, in writing, from their review of a video recording of the 2014 Hearing. W.N. reiterated the need to supplement the record in order to present evidence on events subsequent to the 2014 Hearing bearing upon the issue of whether he is a fit and proper person. The court indicated that it would take this argument under consideration.

W.N. subsequently filed a petition raising objections to the exclusion of the Crosiers' visitation reports and Dr. Wyss's progress notes. Rather than excluding the Crosiers' visitation reports, W.N. argued, any hearsay statements therein could be redacted and the visitation reports could then be considered in determining W.N.'s entitlement to a de facto custody presumption and in rendering a custody award in the best interests of Child. In addition, W.N. objected to the exclusion of Dr. Wyss's progress notes and argued the court should permit Dr. Wyss to provide testimony to rebut the sexual abuse allegations against W.N. Dr. Wyss's testimony should address a letter he wrote to Child Welfare Services regarding the allegations, W.N. contended, and the letter should be admitted into evidence. S.M. filed a statement of no objection to limitation to the 2014 Hearing record on remand.

The family court denied all of W.N.'s evidentiary objections. The court found that the Crosiers' visitation reports were hearsay and the Crosiers were allowed to testify, and that Dr. Wyss's progress notes were cumulative. The family court then determined that based upon its review of the 2014 Hearing record, W.N. had failed to establish a prima facie case under HRS § 571-46(a)(2) for a de facto custody presumption. Accordingly, the family court ruled that it would not be in the best interests of Child to award W.N. joint custody.

11

On June 8, 2017, the family court entered its Findings of Fact and Conclusions of Law and Order (2017 Order). The family court found that a review of the transcripts and the audio and video recording of the 2014 Hearing enabled it to judge credibility and determine whether W.N. satisfied the elements of HRS § 571-46(a)(2). Based upon this evidence, the family court concluded that while W.N. met two of the three elements of HRS § 571-46(a)(2), he did not meet his burden as to the "fit and proper person" statutory element because of (1) his undisputed anger management problem and (2) Dr. De Costa's and C.N.'s unfavorable testimony, including Dr. De Costa's testimony as to Child's regression and Son's performance on psychological tests and "extreme regression." The family court thus denied W.N.'s custody petition.

W.N. timely filed a Notice of Appeal from the 2017 Order. The case was subsequently transferred to this court.

### III.  STANDARDS OF REVIEW

This court reviews the family court's findings of facts (FOF) under the "clearly erroneous" standard. Waldecker v. O'Scanlon, 137 Hawai'i 460, 466, 375 P.3d 239, 245 (2016).

> A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. On appeal, the family court's conclusions of law are reviewed de novo under the right/wrong standard. Id. (citing In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)).

"The interpretation of a statute is a question of law reviewable de novo." Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kaua'i, 133 Hawai'i 141, 163, 324 P.3d 951, 973 (2014) (quoting Franks v. City & Cty. of Honolulu, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)).

"[W]here the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and the appropriate standard for appellate review is the right/wrong standard." State v. Moore, 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996) (internal quotation marks and citation omitted).

## IV. DISCUSSION

W.N. asserts that the family court abused its discretion by denying his request to hold an evidentiary hearing on remand. W.N. contends that the only disputed issue before the family court on remand was whether he satisfied the "fit and proper person" element of HRS § 571-46(a)(2) for application of a de facto custody presumption. Yet, argues W.N., the family court improperly limited evidence bearing upon this determination by excluding (1) the Crosiers' visitation reports

13

based upon hearsay statements of Child;[8] (2) Dr. Wyss's progress notes from the individual and couples therapy sessions, his testimony as to matters ruled outside the scope of his clinical note, and his letter to Child Welfare Services;[9] and (3) evidence that W.N. had subsequently obtained a foster care license that required him to undergo a psychosexual evaluation. To determine the best interests of Child, W.N. asserts, the family court must consider the present circumstances instead of those from the date of the 2014 Hearing. As such, W.N. maintains, it was a manifest injustice for the family court to deny his request to present new evidence and to hold based solely on the 2014 Hearing record that he is not "a fit and proper person."[10]

In response, S.M. argues that the family court was not required by this court's decision to hold a new evidentiary

---

[8]    W.N. also challenged the ruling in the 2014 Hearing that did not allow the Crosiers to use their reports to refresh their recollections.

[9]    W.N. argues that although in A.A. v. B.B. this court found that the family court's limitation of Dr. Wyss's testimony and the exclusion of the progress notes were harmless, it was error for the family court on remand to prevent W.N. from offering relevant information to establish that he is a "fit and proper person." This court, W.N. asserts, foresaw this problem and stated that the family court could revisit its evidentiary rulings on remand.

[10]    W.N. also argues that the trial court abused its discretion in finding, contrary to this court's footnote in A.A. v. B.B., that there was not sufficient evidence in the record to hold that W.N. is a "fit and proper person." In doing so, W.N. maintains, the family court improperly disregarded extensive favorable testimony from both Dr. Wyss and the Crosiers as to W.N.'s relationship with and care of Child, as well as Dr. Wyss's testimony regarding W.N.'s progress in anger management. That evidence was sufficient, W.N. contends, to find that he is a "fit and proper person."

hearing on remand. On the contrary, S.M. contends, the decision indicated that the hearing record was sufficient to make a determination as to whether W.N. had established a prima facie case of a de facto custody presumption under HRS § 571-46(a)(2). It would have been error, S.M. asserts, for the family court to give W.N. an opportunity to re-litigate the issues heard at the 2014 Hearing with new facts.[11] Additionally, S.M. argues that the family court on remand properly excluded the evidence that W.N. sought to introduce as it contained hearsay or was needlessly cumulative and that the court rendered rulings as to W.N.'s evidentiary objections in accordance with this court's evidentiary holdings in the first appeal.

We first address the question as to whether the family court erred on remand when it denied W.N.'s request for a further evidentiary hearing. Thereafter, we turn to W.N.'s evidentiary objections on remand, including the exclusion of the Crosiers' visitation reports, the limitation of Dr. Wyss's testimony, and the exclusion of Dr. Wyss's progress notes.

---

[11] As to the family court's conclusion that W.N. did not meet the "fit and proper person" element, S.M. contends that W.N.'s admitted anger management problem and the testimony regarding Child and Son's regression, sexual abuse allegations, and conflicts between S.M. and W.N. were sufficient to establish that it would not be in the best interests of Child to award W.N. joint custody. Thus, S.M. argues, the family court properly held that W.N. is not a fit and proper person for custody.

15

**A.    A Court Must Consider Relevant, Probative Evidence To Determine Whether The Petitioner Is A Fit And Proper Person And Whether A Custody Award Is In The Best Interests Of The Child**

The primary issue before this court is whether the family court erred on remand by precluding W.N. from presenting evidence of circumstances arising after the 2014 Hearing that directly related to whether W.N. was a "fit and proper person" with a prima facie entitlement to custody of Child.  This court instructed the family court on remand to make a determination as to whether W.N. satisfies the elements of HRS § 571-46(a)(2) for a de facto custody presumption,[12] and if so, to make a custody award in the best interests of Child.  A.A. v. B.B., 139 Hawai'i 102, 116-17, 384 P.3d 878, 892-93 (2016).  Based solely upon the 2014 Hearing record, the family court held that W.N. did not satisfy the "fit and proper person" element of HRS § 571-46(a)(2), and he was thus not entitled to a de facto custody presumption for an award of custody of Child.

It is well settled that in child custody cases the paramount concern is the best interests of the child.  Doe v. Doe, 98 Hawai'i 144, 155, 44 P.3d 1085, 1096 (2002).  The criteria and procedures for the family court to award custody

---

[12]    HRS § 571-46(a)(2) (Supp. 2013) provides that a person other than the child's father or mother may establish that he or she is entitled to a prima facie award of custody if that person "has had de facto custody of the child in a stable and wholesome home and is a fit and proper person."

16

and determine the best interests of the child are set forth in HRS § 571-46. HRS § 571-46 (Supp. 2016). We thus construe HRS § 571-46 to determine the legislature's intent as to the timeliness of information to be considered in determinations implicating the best interests of the child. When construing a statute, "our foremost obligation is to ascertain and give effect to the intention of the legislature which is to be obtained primarily from the language contained in the statute itself." Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kauai, 133 Hawaiʻi 141, 163, 324 P.3d 951, 973 (2014) (quoting Franks v. City & Cty. of Honolulu, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)).

Accordingly, we look first to the plain language of HRS § 571-46, which indicates that current, relevant evidence is required for a court to make an informed decision regarding applicability of a de facto custody presumption. The presumption's pivotal requirement that a person "is [] fit and proper," HRS § 571-46(a)(2) (emphasis added), requires the court to consider if the person is fit and proper to care for the minor child at the time of the contemplated custody award. Such a determination by its nature cannot be based solely on circumstances as they existed years before custody would be granted. The plain language of HRS § 571-46(a)(2) requires the

court to consider relevant, probative evidence of the person's present fitness for custody.

Many of the same contemporary considerations relevant to whether a person is presently fit and proper are also critical in evaluating whether a custody award is in the best interests of the child. HRS § 571-46(b) requires the family court to consider multiple factors to determine the best interests of the child, such as "[a]ny history of sexual or physical abuse of a child by a parent"; "[a]ny evidence of past or current drug or alcohol abuse"; "[t]he overall quality of the parent-child relationship"; the physical, emotional, safety, and educational needs of the child; "[t]he mental health of each parent"; and "[t]he areas and levels of conflict present within the family." HRS § 571-46(b). These factors are not time-restricted. For example, the family court must consider "[a]ny history" of abuse, encompassing all possible instances of abuse, regardless of when the abuse occurred; the family court is also required to consider "[a]ny evidence of past or current drug or alcohol abuse." HRS § 571-46(b)(1)-(2), (13) (emphasis added). Determinations of the child's physical, emotional, safety and educational needs are set forth in the present tense, requiring the court to consider the child's needs as of the time of the custody proceeding. HRS § 571-46(b)(6)-(9).

The best interests of the child factors must also be read in conjunction with other provisions of HRS § 571-46. Kauai Springs, 133 Hawaiʻi at 163, 324 P.3d at 973 ("It is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." (quoting State v. Davis, 63 Haw. 191, 196, 624 P.2d 376, 380 (1981))). Subsection (a) of HRS § 571-46 empowers family courts to make and modify custody awards guided by the best interests of the child at any time as "necessary or proper" during the minority of the child. HRS § 571-46(a). Subsection (a)(6) of HRS § 571-46 provides that existing custody awards "shall be subject to modification or change whenever the best interests of the child require or justify the modification or change." HRS § 571-46(a)(6). We have construed this provision to require courts to consider changed circumstances and make a custody modification in alignment with the best interests of the child after an initial custody award. Waldecker v. O'Scanlon, 137 Hawaiʻi 460, 470, 375 P.3d 239, 249 (2016). Read in pari materia, these provisions evince the legislature's intent that the determination of the best interests of the child take into consideration both past and present circumstances.

Our precedents further reflect that HRS § 571-46 calls for a determination based on all probative evidence. In Doe,

19

this court held that the family court erroneously denied the mother a re-hearing in a custody proceeding when she was unable to present evidence of the father's alleged abusive behavior at the initial custody hearing because the hearing time had expired.  98 Hawai'i at 147-48, 156, 44 P.3d at 1088-89, 1097.  The court erred, we stated, because the denial of the re-hearing "resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interest of [the c]hild."  Id. at 155, 44 P.3d at 1096.

In a more recent case, Tumaneng v. Tumaneng, the family court precluded a mother seeking modification of a custody decree, in light of father's relocation and mother's planned relocation, from introducing evidence of alleged domestic violence that had occurred prior to the original custody decree but was not proffered by mother in the original proceedings.  138 Hawai'i 468, 471-72, 382 P.3d 280, 283-84 (2016).  We held that the family court erred in excluding this evidence because the information was relevant to making a custody determination in the best interests of the child regardless of when it occurred.  Id. at 474, 382 P.3d at 286.

As in Tumaneng and Doe, the family court's failure to hold a further evidentiary hearing on remand resulted in the exclusion of information relevant to determining whether W.N. is a fit and proper person, as well as information relevant to

ascertaining the best interests of Child. See Tumaneng, 138 Hawai'i at 474, 382 P.3d at 286; Doe, 98 Hawai'i at 155, 44 P.3d at 1096. The family court did not consider any circumstances that arose over the course of more than two years after the 2014 Hearing relating to whether W.N. was a "fit and proper person" under HRS § 571-46(a)(2). Significantly, W.N. made an offer of proof that he would supplement the record with evidence that he had undergone a psychosexual evaluation and obtained a foster care license since the 2014 Hearing. This evidence would have directly pertained to the court's determination of whether W.N. was presently a fit and proper person.

Other jurisdictions have also held that when custody of a child is at issue, a person's present fitness must be considered. See, e.g., Adoption of Mary, 610 N.E.2d 898, 902 (Mass. 1993) (in issue is whether parent is "presently unfit"); Roeh v. Roeh, 746 P.2d 1016, 1018-19 (Idaho Ct. App. 1987) (lower court erred when it granted custody to father on findings that were three to seven years old and ignored evidence of mother's present fitness); In re O.J.R., 769 S.E.2d 631, 638 (N.C. Ct. App. 2015) (in termination of parental rights case, "parents' fitness to care for their children should be determined as of the time of the hearing" and the "trial court must consider evidence of changed conditions" (quoting In re Ballard, 319 S.E.2d 227, 231 (N.C. 1984))); Larson v. Larson, 30

Wis. 2d 291, 299, 140 N.W.2d 230, 235 (1966) ("Fitness should be determined as of the time of the hearing and as to its future probability."). Additionally, when a lower court has failed to consider whether a parent is presently fit for custody, appellate courts in other jurisdictions have remanded the cases for further evidentiary hearings. See, e.g., Roeh, 746 P.2d at 1021 ("Upon remand, the magistrate is empowered to take additional evidence relating to the present fitness of the parents in determining the custody issue."); Armistead v. Armistead, 322 S.E.2d 836, 838 (Va. 1984) (where court excluded evidence relevant to best interests of child, on remand "the chancellor should consider all the evidence already in the record as well as any new evidence the parties may submit relevant to the determination of [child's] best interests").

Based on a plain meaning reading of HRS § 571-46, an in pari materia reading of its provisions, and precedent from this and other jurisdictions, the family court must consider admissible evidence probative of establishing the elements of HRS § 571-46(a)(2), including evidence as to whether a person is a fit and proper person at the time of the court's determination. If the statutory elements are satisfied, then consideration of such evidence is essential for the family court to make a custody award in the best interests of the child. In this case, the passage of time since the 2014 Hearing and W.N.'s

offer of proof that he obtained a foster care license and underwent a psychosexual evaluation for the licensure indicates that there was new, material evidence bearing upon whether W.N. was a fit and proper person as of the time of the proceedings on remand.  In limiting review on remand to the 2014 Hearing record, the family court precluded consideration of this evidence.  The family court thus erred in denying W.N.'s request to hold a further evidentiary hearing on remand.[13]

### B.    Evidentiary Objections

In light of our disposition remanding this case for further proceedings, we provide guidance as to other evidentiary matters that have been raised in this appeal.

### 1. Exclusion of Visitation Reports on Hearsay Grounds

At the 2014 Hearing, the family court sustained objections to the introduction of the Crosiers' visitation reports because the reports contained hearsay statements of

---

[13]    W.N. also contends that the family court erred in not concluding that there was sufficient evidence in the record to support that W.N. is a fit and proper person.  Although we noted in A.A. v. B.B. that the record was sufficient to support a finding that W.N. satisfied the elements of HRS § 571-46(a)(2), as discussed above, it was necessary for the family court to make a determination as to whether W.N. was presently a fit and proper person.  Accordingly, we do not address whether the 2014 Hearing record would have entitled W.N. to a de facto custody presumption when the hearing occurred.

Child.[14]  Similarly, on remand, the family court excluded the visitation reports on hearsay grounds and because the Crosiers testified at the 2014 Hearing.[15]

W.N. argued both during the 2014 Hearing and on remand that Child's statements in the visitation reports were not offered for the truth of the matter asserted and thus they were not hearsay.  W.N. alternatively asserted that if Child's statements were hearsay, then the statements could be redacted or could fall under the excited utterance exception.  It appears that the family court concluded that Child's statements were hearsay; that the statements did not qualify under a hearsay exception; and that they could not have been redacted from the

---

[14]    Hawaii Rules of Evidence (HRE) Rule 801 provides in relevant part as follows:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

> "Statement" is an oral assertion, an assertion in a writing, or nonverbal conduct of a person, if it is intended by the person as an assertion.

HRE Rule 801 (2016).  HRE Rule 802 (2016) provides as follows: "Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute."

[15]    The record is not clear as to the reasoning underlying the family court's hearsay ruling on remand regarding the visitation reports.  Because S.M. did not file any new objections or a response to W.N.'s objections, we consider only the reasoning S.M. articulated during the 2014 Hearing and the basis given by the court in its original ruling, i.e., that the reports contained hearsay statements made by Child.

visitation reports in a manner that would have enabled the court to duly consider the remaining substance of the reports.

As stated previously, it is well settled that, in child custody cases, the paramount concern is the best interests of the child. Doe v. Doe, 98 Hawai'i 144, 155, 44 P.3d 1085, 1096 (2002). The visitation reports prepared by the Crosiers contemporaneously with supervised visits of W.N. and Child between June 23, 2014 and September 30, 2014 contain detailed descriptions of W.N. and Child's interactions, as well as changes in Child's behavior and eating over time. The reports recount certain statements and exclamations made by Child during the course of the supervised visits. Independent of their factual accuracy, these statements demonstrate how Child interacted with W.N. As such, Child's statements were not offered for the truth of the matter asserted and are not hearsay.[16]

The visitation reports contain information directly relevant to assessing whether W.N. is a fit and proper person and whether a custody award is in the best interests of Child. Accordingly, on remand, the family court should reexamine its

_____

[16]    Additionally, the statements by Child appear to be relatively isolated, appearing to make redaction feasible and not justifying excluding the reports in their entirety if the remaining portions were otherwise admissible.

evidentiary rulings related to the admission of the visitation reports.[17]

## 2. Limitation of Dr. Wyss's Testimony and Exclusion of Progress Notes on Remand

W.N. contends that the family court on remand erred and abused its discretion in its evidentiary rulings as to Dr. Wyss.  W.N. argues that, although this court held in A.A. v. B.B. that the limitation of Dr. Wyss's testimony and the exclusion of progress notes from counseling sessions with W.N. and S.M. were harmless, the limitation and exclusion on remand precluded the family court from considering relevant evidence as to whether W.N. was a fit and proper person.

Following remand, the family court excluded Dr. Wyss's progress notes on the basis that they were cumulative.[18]  Hawaii

_____

[17]    On appeal, W.N. also argues that the visitation reports should have been considered by the family court on remand because the family court in the 2014 Hearing did not allow the Crosiers to refresh their recollections with the reports.  A writing may be used to refresh a witness's recollection when the witness's memory has lapsed.  HRE Rule 612 (2016); State v. Espiritu, 117 Hawai'i 127, 137, 176 P.3d 885, 895 (2008).  A review of the record indicates that the family court did not err in ruling that W.N. did not establish a proper foundation for refreshing recollection because neither Janet Crosier nor Steve Crosier clearly indicated a lapse in memory prior to counsel's attempt to provide the writing to the Crosiers to refresh their recollections.  Nevertheless, the family court on remand may consider allowing further testimony from the Crosiers regarding the visitation reports in making an informed determination of the matters before it.

[18]    It is noted that at the 2014 Hearing, the family court excluded Dr. Wyss's progress notes on a different basis--as outside the scope of his clinical note.  However, the progress notes appear to contain matters within the scope of the clinical note.  For example, the clinical note references

(continued . . .)

Rules of Evidence (HRE) Rule 403 provides that relevant evidence may be excluded if it is a "needless presentation of cumulative evidence."  HRE Rule 403 (2016).[19]  This court has held that, "[i]n order for evidence to be considered 'cumulative' for HRE 403 purposes, it must be substantially the same as other evidence that has already been received."  State v. Pulse, 83 Hawaiʻi 229, 247, 925 P.2d 797, 815 (1996).

The record does not indicate that the family court on remand identified the other admitted evidence that rendered the progress notes cumulative.  Thus, it is unclear if the progress notes constitute a "needless presentation of cumulative evidence."  See HRE Rule 403.  A review of the progress notes indicates that they include substantial information regarding W.N.'s anger management therapy, they reference the sexual abuse allegations against W.N., and they contain Dr. Wyss's clinical opinion regarding such allegations.  Thus, the progress notes appear to bear upon issues about which Dr. Wyss did not testify

---

(. . . continued)

W.N.'s anger management issue and the use of cognitive-behavioral therapy interventions to treat this challenge and indicates that W.N.'s behavior involves "no physical aggression."

[19]    HRE Rule 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

or about which Dr. Wyss's testimony was limited by court rulings during the 2014 Hearing. Additionally, the family court on remand did not address the letter that Dr. Wyss had written to Child Welfare Services regarding the sexual abuse allegations against W.N.[20]

Therefore, following this second remand, the family court should reexamine its ruling that the progress notes are cumulative of other evidence in the record and, if so, identify such evidence already in the record. Provided they are otherwise admissible, any progress notes containing probative, non-cumulative evidence should be considered, along with proffered testimony related to the import of such progress notes. Finally, the family court should address the

---

[20] In our decision in the first appeal, we concluded that although under the circumstances any error by the family court in restricting Dr. Wyss's testimony or in not admitting the progress notes was harmless, we stated that "if further evidentiary proceedings are held on remand, the family court may revisit its ruling regarding the proffered evidence." A.A. v. B.B., 139 Hawai'i 102, 116 n.23, 384 P.3d 878, 892 n.23 (2016). Our determination that the exclusion of the progress notes and the limitation of Dr. Wyss's testimony were harmless relied upon the evidentiary record as then presented and the legal issues considered in the first appeal. As previously discussed, the family court's custody determination will require consideration of probative evidence of present circumstances, and the relative impact of any evidentiary ruling may differ in this context. Thus, the court should reexamine prior rulings challenged on appeal regarding evidence that was excluded at the initial hearing.

admissibility of Dr. Wyss's letter to Child Welfare Services in accordance with the principles set forth in this opinion.[21]

## V.     CONCLUSION

Based on the foregoing, the family court's June 8, 2017 Findings of Fact and Conclusions of Law and Order is vacated, and the case is remanded to the family court for further proceedings consistent with this opinion to determine whether W.N. presently meets the elements of HRS § 571-46(a)(2), and if so, to make a custody award in the best interests of Child.

| | |
|---|---|
| Michael S. Zola<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Timothy Luria<br>Naoko C. Miyamoto<br>Katherine M.M. Lukela | /s/ Sabrina S. McKenna |
| for respondent | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[21]     As to the remaining evidentiary objections raised on appeal by W.N., this court previously addressed substantively similar arguments in A.A. v. B.B. See 139 Hawai'i at 116 n.23, 384 P.3d at 892 n.23. W.N. also argues that the family court misstated the record in regard to C.N.'s testimony that W.N. "had not changed." However, it appears from the transcript of the 2014 Hearing that the family court did not misstate the record.