**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000330
12-JUN-2026
07:50 AM
Dkt. 112 SO**

NO. CAAP-25-0000330

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

P.C., Plaintiff-Appellant, v.
G.S., Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CASE NO. 3FDV-23-0000381)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

In this divorce case, the Family Court of the Third Circuit awarded sole legal custody and primary physical custody of two minor **Children** to G.S. (**Father**), and ordered P.C. (**Mother**) to pay child support to Father.[1] Mother, representing herself, appeals from the February 10, 2025 *Divorce Decree*.[2] Appeals affecting child custody have priority under Hawaii Revised Statutes (**HRS**) § 571-54 (2018). We affirm.

The family court found, and Mother does not challenge,[3] that: Mother and Father were legally married in February 2022.

---

[1] The Honorable Jill M. Hasegawa presided.

[2] Mother's opening brief does not comply with Rule 28(b) of the Hawaiʻi Rules of Appellate Procedure (**HRAP**). To promote access to justice, we do not automatically foreclose self-represented litigants from appellate review if they don't comply with court rules. Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020). Accordingly, we address what we discern to be Mother's arguments. But we disregard the brief's appendices. See HRAP Rule 28(b)(10) ("Anything that is not part of the record shall not be appended to the brief[.]").

[3] Unchallenged findings of fact are binding on appeal. Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).

Mother (representing herself) filed for divorce in September 2023.  A child custody evaluator was appointed.  The custody evaluator's report, dated June 8, 2024, was filed on July 15, 2024.

A pretrial order was entered on September 13, 2024.  Trial was set for December 6, 2024.  Witness lists, exhibit lists, and exhibits were to be exchanged by November 22, 2024.

Counsel for Mother appeared on October 8, 2024.  By order entered on October 28, 2024, trial was rescheduled to December 13, 2024, with the custody evaluator to testify by Zoom.  The deadline to exchange witness lists, exhibit lists, and exhibits was extended to November 29, 2024.

**(1)**  Trial began on December 13, 2024.  The custody evaluator testified, and her report was admitted in evidence.  Mother contends the family court erred by admitting and relying on the custody evaluator's report and testimony "with no articulated reliability basis at the decision point."  She appears to challenge the custody evaluator's qualifications.

The custody evaluator is a licensed psychologist.  She has been on the Judiciary's list of qualified custody evaluators since 2016.  See HRS § 571-46.4 (Supp. 2024).  The family court appointed her under HRS § 571-46(a)(4) (2018).  Under the statute, her report could be received in evidence if she was available for cross-examination.  She was extensively cross-examined by Mother's counsel.  The family court did not err by admitting the custody evaluator's report and testimony.

Mother's other arguments challenge the custody evaluator's credibility and the weight the family court gave her report and testimony.  "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

**(2)**  After the custody evaluator finished testifying, the family court noted that Mother had not filed a witness or exhibit list.  Father's counsel stated, and Mother's counsel did

not deny, that Mother did not send a witness or exhibit list, or exhibits, to Father.

Mother's counsel then asked to continue the trial "to reset that, ah, exhibit list and exhibit exchange deadline and, um, witness list filing deadline."  The family court denied a continuance.  It explained:

> With regards to the motion to continue, so I will note that this trial was -- the trial dates of December were initially set back in August.  That was five months ago.
>
> Um, I do know and note that in October the trial dates were -- were pushed back a week, um, at the Court's request and the deadlines were similarly extended for a week and that was made very clear to the parties that they had deadlines to file and/or exchange exhibits, exhibit lists, witness lists.
>
> While, [Mother], I know you were represented early on in in [sic] the case.  We've already had trials in your -- other related cases.  You are aware of the Court's rules regarding exhibits and exchanging those exhibits by deadlines.
>
> Similarly you did retain counsel.  Um, at least by the last court date, which was almost two months ago.  So there was time to get him those exhibits and meet those deadlines timely.
>
> Um, when considering whether or not the Court should continue a trial the standard that I -- that I, um, and am asked to review it on is based on whether there's good cause to continue the trial.
>
> Um, and based on the arguments that I've heard and the representations of counsel, um, I do not find that there is good cause to continue the trial.
>
> In addition, I will note that, ah, as the parties are aware, trial dates, we have very few all day trial dates which only occur on Fridays.
>
> Right now if I were to continue trial we would be looking at trial dates in possibly March or April.  And this matter has been set since August.  So I'm not going to be continuing the trial at this time.

Mother contends the family court erred by denying a continuance.  We review for abuse of discretion.  Weinberg v. Dickson-Weinberg, 121 Hawaiʻi 401, 433, 220 P.3d 264, 296 (App. 2009), aff'd in part, vacated in part, 123 Hawaiʻi 68, 229 P.3d 1133 (2010).

This case is not like Weinberg, where "Wife was without counsel during several critical weeks leading up to trial[,]" had

3

filed four pretrial motions asking to continue the pretrial deadlines, and "the family court did not explain why it denied Wife's various motions for an extension of pretrial deadlines, except for one family-court judge who stated that he did not believe he was authorized to grant an extension because two prior motions for continuance had already been denied."  121 Hawaiʻi at 434-35, 220 P.3d at 297-98.

Mother's oral motion to continue was made on the first day of trial, after the first witness's testimony had been received.  Her only reason for continuing the trial was to cure her failure to comply with the pretrial deadlines.  Although she was unrepresented when those deadlines were set, she soon retained counsel and was represented when the deadlines were continued, and up to and including the trial.  She gave no reason for not complying with the deadlines.  Nor did she explain what witnesses she would call, what exhibits she would introduce, and why the evidence would have been material.  Under the circumstances, the family court did not abuse its discretion by declining to continue the trial once it had begun.

**(3)**  The family court also precluded Mother from offering any trial exhibits other than "financials" and previously filed asset and debt and income and expense statements, and calling any witnesses other than herself and those on Father's witness list.

Rule 94.3 of the Hawaiʻi Family Court Rules addresses pretrial disclosures and exhibits:

> **(a)** **Disclosures and exhibits**.  When a pre-trial conference is held, except as and to the extent otherwise ordered by the court:
>
> (1)  Each party shall disclose . . . the names and addresses of all witnesses that the party intends to call.
>
> (2)  Each party shall submit to the other party by the exchange date listed in the pre-trial order an Exhibit List and all exhibits which are in the party's possession or under the party's control which the party intends to offer in evidence at the trial.
>
> (3)  Unless so disclosed and exchanged, no exhibits required to be disclosed and exchanged by paragraph (2) of this Rule shall be received in evidence at the trial over objection unless the court finds that there was reasonable

ground for failing to disclose and exchange such exhibits prior to trial.

The family court explained its ruling:

I made very clear when I set these trial dates that if a party fails to file a witness list they could be precluded from calling any witnesses aside from themselves to testify at trial.

And the reason for that rule is to prevent trial by ambush or trial by surprise. The other party needs to be provided notice of who will be testifying so that if they have any concerns or they need to do discovery they may do so.

In addition, with regards to any exhibit lists it's the same thing. The parties are ordered to exchange exhibits before trial so the other party has the opportunity to review those exhibits.

Again, this is not trial by surprise. This is trial -- everyone should be prepared for trial and that includes exchanging the exhibits so the other party has the opportunity to review those exhibits before trial.

Mother gave no explanation for her failure to send her witness and exhibit lists and proposed trial exhibits to Father. Under these circumstances, it was within the family court's discretion to preclude Mother from offering any trial exhibits other than "financials" and previously filed asset and debt and income and expense statements, and calling any witnesses other than herself and those on Father's witness list.

**(4)** Mother contends the family court incorrectly applied HRS § 571-46(a)(9), and entered insufficient findings and conclusions, when deciding child custody.

The best interests of the child is the paramount concern in child custody cases. <u>W.N. v. S.M.</u>, 143 Hawaiʻi 128, 135, 424 P.3d 483, 490 (2018). HRS § 571-46(a) establishes "standards, considerations, and procedures" to guide the family court in awarding child custody. It provides:

(9)     In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence. In addition to other factors that a court shall consider in a proceeding in

5

which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:

(A) The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;

(B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and

(C) If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;

(10) A court may award visitation to a parent who has committed family violence only if the court finds that adequate provision can be made for the physical safety and psychological well-being of the child and for the safety of the parent who is a victim of family violence[.]

"Family violence" means:

the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:

(1) Attempting to cause or causing physical harm to another family or household member;

(2) Placing a family or household member in fear of physical harm; or

(3) Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

HRS § 571-2 (2018).

The family court must consider evidence of domestic violence when making a child custody determination. Tumaneng v. Tumaneng, 138 Hawaiʻi 468, 475-76, 382 P.3d 280, 287-88 (2016). But HRS § 571-46 "calls for a [best interests of the child] determination based on all probative evidence." W.N., 143 Hawaiʻi at 136, 424 P.3d at 491 (emphasis added). Here, the family court considered several HRS § 571-46 factors and found:

7. On or around March 22, 2024, Mother filed a Petition for an Order for Protection on Behalf of Family or Household Members in Case No. 3FDA-24-0000241 ("TRO Petition"). . . .

6

. . . .

11.  A trial on the TRO Petition was held before this Court on May 13, 2024 and July 15, 2024. At the conclusion of the trial on the TRO Petition, this Court found that Mother had proven by a preponderance of the evidence that Father was the perpetrator of domestic violence **as to Mother, only as to the specific allegation in her TRO Petition** that Father had sex with Mother on numerous occasions during their relationship while Mother was sleeping. The Court did **not** find that Father exerted extreme psychological abuse and/or coercive control over Mother, notwithstanding Mother's allegations. Furthermore, **the Court did not find any merit as to Mother's allegations that Father was abusive towards the children, and did not include the children on the Order for Protection** filed 7/15/2024.

. . . .

66.  After gathering all the information noted in her report, [the custody evaluator] conducted a risk-benefit analysis of various custodial options and arrived at her recommendations, including: an award of sole physical custody to Father with Mother having generous day visitations until Mother obtains a stable living situation; an award of joint legal custody; the appointment of a parenting coordinator or guardian ad litem; coparenting classes; and therapy for Mother with a neutral therapist.

. . . .

**1)  HRS § 571-46(b)(1): "Any history of sexual or physical abuse of a child by a parent."**

164.  There is no evidence that Father sexually or physically abused the minor children.

. . . .

**2)  HRS § 571-46(b)(2): "Any history of neglect or emotional abuse of a child by a parent."**

167.  The Court finds that there was no neglect or emotional abuse of the minor children by Father.

168.  As to Mother, the Court recognizes there is a history of emotional abuse by Mother as to Mother's three older children, the [redacted] children, and finds credible the allegations that Mother behaved in a similar manner with Father and the minor children.

. . . .

169.  While the minor children were probably too young to remember or be affected by Mother's threats, the testimony of [Mother's ex-husband] and [Mother's adult son] reinforces the concern that this pattern of behavior and threats by Mother to leave and abandon the children will likely continue as they grow older, especially as Mother refuses to acknowledge and change this type of behavior.

**3)  HRS § 571-46(b)(3): "The overall quality of the parent-child relationship."**

7

170. The Court finds both parents have a good relationship with the minor children.

. . . .

173. However, the Court is concerned about and does not find credible, the statements made by Mother, claiming that the children are suffering from the time spent with Father and laying the blame for the alleged change in the children's behavior on Father. Mother's persistence in believing that she is the better parent for the children, and blaming Father's time with the children for what she says is the children "waking up in the middle of the night screaming and crying" and starting to bite, is consistent with her behavior with the [older] children, wherein she would blame [Mother's ex-husband] or the [older] children for all the wrongs.

174. Furthermore, the Court is concerned about Mother's ability to have a good parent-child relationship with the children as they grow older and develop individual personalities and preferences that may conflict with Mother's preferences.

. . . .

### 5) HRS § 571-46(b)(5): "Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule."

179. The Court has no concerns about Father's ability to cooperate in developing and implementing a plan to meet the children's ongoing needs, interest and schedule.

180. The Court has concerns as to Mother's ability to cooperate in developing and implementing a plan to meet the children's ongoing needs, interests and schedule.

181. Specifically, the Court finds that Mother has a history of excluding Father from decision making and/or unilaterally making decisions regarding the children without informing or consulting Father, which is not in the children's best interest.

. . . .

### 6) HRS § 571-46(b)(6): "The physical health needs of the child."

182. The Court makes no finding in favor of either Mother or Father insofar as the physical needs of the minor children.

183. However, as discussed above, the Court does have concerns about Mother's demonstrated history of making unilateral decisions regarding the children without consulting Father, even after the parties were separated and shared joint legal custody.

184. In particular, Mother's decision to unilaterally change the children's health care provider, without consulting Father and notifying him in advance of the change, could have significant negative health impacts for the children in the future, especially if the health care

8

providers both treat the children with medications that could have adverse effects if given together, and one provider was not aware of the actions of the other, etc.

185. Additionally, the Court is concerned with Mother's lack of transparency with regards to the children's medical conditions, and apparent disregard of the need to inform Father in a timely manner.

. . . .

### 7) HRS § 571-46(b)(7): "The emotional needs of the child."

186. As to the emotional needs of the minor children, the Court finds in favor of Father.

187. The Court is concerned about Mother's abilities to ensure the emotional needs of the children are met, especially after hearing the testimony of [the custody evaluator], [Mother's ex-husband], and [Mother's adult son], that Mother's adult children are estranged from each other and Mother, as discussed above.

. . . .

### 8) HRS § 571-46(b)(8): "The safety needs of the child."

. . . .

191. Based on the testimony before this Court, and in particular the [custody evaluator's] Report and observations of Father's home, the Court does not have any concerns about the children's safety needs when in Father's care.

. . . .

### 9) HRS § 571-46(b)(9): "The educational needs of the child."

194. Concerning the minor children's educational needs, the Court is mostly neutral.

195. The Court does have some concerns about Mother's ability to address the educational needs of the children based on the testimony of [Mother's ex-husband] and [Mother's adult son], as well as statements made to [the custody evaluator] contained in [her] Report.

196. Specifically, the Court is concerned about Mother's prior behavior when confronted with educational issues involving the [older] children.

197. Specifically, the Court found credible the testimony of [Mother's ex-husband] that when their daughter . . . was in 2nd grade and was having difficulty reading, Mother would slap [daughter]'s head and tell her to "stop being stupid" and force her to read.

. . . .

199. The Court also found credible [Mother's ex-husband]'s testimony that as the [older] children got older, if Mother felt that they weren't trying hard enough, she would yell at them to "[not] be stupid", even in front of the children's friends, making the children embarrassed.

9

. . . .

### 10) HRS § 571-46(b)(10): "The child's need for relationships with siblings."

202. As for the minor children's relationship with their siblings, the Court finds in favor of Father.

. . . .

204. The children have three (3) adult half-siblings through Mother. Mother is estranged from all of these adult children, and it does not appear that the children will have a relationship with their adult half-siblings when they are with Mother.

205. It appears that Father may [have] some relationship with Mother's adult children, and would continue to foster a relationship between Mother's adult children and the minor children, should they wish it.

206. [Mother's adult son] testified that he has chosen not to interact with the children when they are with Mother. However, [Mother's adult son] indicated that he has been present on several occasions when Mother was not around, and has interacted with Father and the children.

. . . .

### 14) HRS § 571-46(b)(14): "The mental health of each parent."

216. As to the mental health of the parties, the Court has no concerns as to Father, but has concerns about Mother.

217. The Court found compelling the testimony of [the custody evaluator] as to this issue and her concerns about [Mother]'s mental health.

218. In addition, based on the testimony of [Mother's ex-husband] and [Mother's adult son], the Court does believe that Mother has mental health issues that need to be acknowledged and addressed before she can fully parent the children in their best interest.

### 15) HRS § 571-46(b)(15): "The areas and levels of conflict present within the family."

219. As to the areas and levels of conflict within the family, the Court finds in favor of Father.

220. The Court is concerned about Mother's parenting. It is clear she raised responsible older adults. However, based on the testimony before the Court, it is clear that as her other children got older and challenged Mother, as children are wont to do, Mother's response was not appropriate. The Court is concerned that without therapy or treatment to address her issues, as the minor children get older and start to challenge Mother, they will also face the same issues, which is not in their best interest. Mother needs to address her parenting style.

(Bold italics added.)

The family court appropriately addressed HRS § 571-46(a)(9), as well as many other factors in the statute. "Because there was evidence produced, including [the custody evaluator]'s report, that it was in the [C]hildren's best interests for [Father] to be awarded sole legal and physical custody of the [C]hildren, the presumption created by HRS § 571-46(9) . . . [was] effectively rebutted." Rezentes v. Rezentes, 88 Hawaiʻi 200, 209, 965 P.2d 133, 142 (App. 1998). The family court's findings of facts were supported by substantial evidence. The court concluded that "it would be in the children's best interest to award Father sole legal and physical custody of the children at this time." That conclusion was supported by the family court's findings of fact and reflected an application of the correct rule of law; it will not be overturned. Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

**(5)** Mother contends that the family court's "cumulative error & downstream effects" require vacating the court's child custody ruling. As discussed above, there was no error. There is nothing to cumulate.

Mother argues the family court "erred by entering child support orders referencing a Guidelines Worksheet that does not appear in the record[.]" The completed Child Support Guidelines Worksheet is attached as Exhibit "A" to the *Findings of Fact, Conclusions of Law and Order Re: (1) Divorce Decree Filed February 10, 2025*.

Mother argues "[c]hild support must be vacated and recalculated on remand following corrected custody/time-sharing findings and supported factual determinations." There is no need to recalculate child support because we are affirming the family court's child custody determination.

Mother argues "[p]roperty division and reimbursement/ equalization determinations require reconsideration on remand because the record was constrained by the preclusion order." The family court acted within its discretion by precluding Mother from offering any trial exhibits other than "financials" and previously filed asset and debt and income and expense

11

statements, and calling any witnesses other than herself and those on Father's witness list. And the family court stated it "accepts the parties' agreement that each shall keep the assets in their names and be responsible for the debts in their names." Mother does not dispute there was an agreement. Mother offers no other argument about why the family court erred by not awarding either party a property division equalization payment.

The February 10, 2025 *Divorce Decree* is affirmed.

DATED: Honolulu, Hawaiʻi, June 12, 2026.

On the briefs:

P.C.,
Self-represented
Plaintiff-Appellant.

G.S.,
Self-represented
Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge